OPINION
{¶ 1} Defendant-appellant, Robert Lytle ("Lytle"), appeals from a judgment entered by the Franklin County Municipal Court in favor of plaintiff-appellee, Garland Pinson ("Pinson"). Based upon our review of the record and submitted briefs, we uphold the trial court's judgment, but amend the award to Pinson.
 {¶ 2} This dispute arises from two separate agreements entered into by Pinson and Lytle sometime in early to mid-2004. Although the record does not contain precise dates, the timeline of events is clear.
 {¶ 3} Lytle ran a conglomeration of rental businesses ranging from storage facilities to residential mobile home lots and commercial buildings on his property. In the summer of 2004, Pinson's friend, Clark Van Houten ("Van Houten"), rented garage space to run his own mechanic shop from Lytle. Pinson helped Van Houten in his shop. Van Houten agreed to let Pinson store his 1965 Ford Falcon and a separate motor on the property with the rest of the cars Van Houten was working on. Lytle assured Pinson that he would not be charged a storage rental fee to leave the car and motor on the property.
 {¶ 4} After Pinson moved his car from Kentucky to Lytle's property, he entered into a separate oral arrangement with Lytle to rent a camper-trailer located on one of the mobile home lots for $300 per month on a month-to-month basis. Pinson moved in that summer and stayed until sometime in December.
 {¶ 5} As winter progressed, Pinson notified Lytle's representative several times that the lack of heat in the trailer rendered it uninhabitable. When the cold became unbearable, Pinson moved out of the trailer. Pinson did not provide written notice and did not leave a forwarding address when he moved. However, Pinson's car remained on the property outside of Van Houten's garage. Pinson testified at trial that he returned several times to check on his car after he vacated the trailer.
 {¶ 6} On February 24, 2005, Lytle notified Pinson via certified mail that he considered Pinson's vehicle and motor abandoned as of January 5, 2005. The letter also stated Lytle was charging Pinson $25 per day storage fee, and that he owed $1,075 as of the date of the notice. Pinson did not receive the notice because it was sent to his last known address at the trailer he rented from Lytle. In June 2005, Lytle filed an Abandoned Vehicle Affidavit with the Bureau of Motor Vehicles ("BMV") and obtained title to Pinson's car. Testimony at trial revealed that Lytle gave the car as payment for services to another individual. It is not apparent what became of Pinson's motor.
 {¶ 7} On June 24, 2005, Pinson filed a complaint alleging breach of contract, trespass to chattels, and conversion. The parties were notified on September 29, 2005 that a trial date was set for December 15, 2005. However, Lytle failed to appear for trial and his counsel made an oral motion for continuance on the day of the trial. The court denied the motion, and the trial proceeded. The trial court held that Lytle wrongfully converted Pinson's property and Pinson was entitled to the market value of the car and motor. The court found that the motor was worth $2,800 and the car was worth $7,500, for a total of $10,300. However, the trial court awarded Pinson $9,300 in damages instead of $10,300.
 {¶ 8} Lytle timely appealed and asserted four assignments of error:
ASSIGNMENT OF ERROR NO. 1:
THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT REFUSED TO GRANT APPELLANT A CONTINUANCE OF THE TRIAL.
ASSIGNMENT OF ERROR NO. 2:
THE TRIAL COURT ERRED IN FINDING THAT APPELLANT CONVERTED APPELLEE'S PROPERTY.
ASSIGNMENT OF ERROR NO. 3:
THE TRIAL COURT ERRED IN DETERMINING OWNERSHIP OF THE VEHICLE IN QUESTION.
ASSIGNMENT OF ERROR NO. 4:
THE TRIAL COURT ERRED IN DETERMINING DAMAGES.
 {¶ 9} In his first assignment of error, Lytle claims the trial court abused its discretion in denying his motion for a continuance. Lytle argues that he was in New Orleans assisting with clean-up following Hurricane Katrina and was unable to return by the scheduled trial date. However, Lytle's counsel failed to provide any notice to the court until the morning of trial. Counsel for Pinson happened to find out that Lytle was not returning for the trial after a chance encounter with Lytle's counsel the day before the trial.
 {¶ 10} Pursuant to Civ.R. 5(A), motions for continuance must be in writing and must be served upon the opposing party. Additionally, Franklin County Municipal Court Rule 3.06 requires that a motion for continuance must be filed five court days before the scheduled hearing. The Rules of Superintendence for the courts of Ohio reiterate these requirements. However, Sup.R. 41(A) permits a trial court to waive these requirements upon a showing of good cause. The final determination of whether to grant a continuance is within the sound discretion on the part of the trial court.
 {¶ 11} In determining whether to grant a continuance, the trial court must weigh its own interest in managing its docket with the "public's interest in the prompt and efficient dispatch of justice." State v. Unger (1981), 67 Ohio St.2d 65, 67. We may reverse the trial court's decision to deny a request for continuance only upon a showing that the trial court abused its discretion. Id. The court in Unger stated that: In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.
Id. at 67-68.
 {¶ 12} In this case, Lytle failed to comply with any of the filing requirements. His request for continuance was not made in writing, nor was it served upon Pinson. Furthermore, the request was made on the day trial was scheduled to begin, although Lytle had three months notice of the trial date. Additionally, Lytle had plenty of time to notify his attorney that he did not intend to be present on the scheduled date. At the time counsel requested a continuance, counsel for Lytle could not provide a time frame for when Lytle might return for trial. Therefore, we find that the trial court did not abuse its discretion by denying Lytle's request for a continuance.
 {¶ 13} In his second assignment of error, Lytle argues that the trial court erred in finding that he converted Pinson's property. Lytle asserts that Pinson abandoned his car when he moved out of the trailer and ceased paying rent. Lytle further notes that he attempted to notify Pinson that he must pay a storage fee or the vehicle would be considered abandoned. Pinson counters that his rental agreement was separate from the agreement to keep his car and motor on Lytle's property. Therefore, Lytle was not entitled to exercise control over Pinson's property once the rental agreement was terminated.
 {¶ 14} For the court to find a conversion, Pinson was required to show that Lytle (1) exercised dominion and control, (2) over Pinson's property, (3) in a manner inconsistent with Pinson's ownership rights of the car. Ohio Tel. Equip. Sales,Inc. v. Hadler Realty Co. (1985), 24 Ohio App.3d 91. It is undisputed that Lytle sold Pinson's car and moved the motor. The key issue is whether Lytle's dominion and control over Pinson's car and motor were inconsistent with Pinson's ownership rights.
 {¶ 15} Lytle asserts that Pinson abandoned and relinquished his ownership rights to the car and motor when he moved out of the trailer and stopped paying rent. Lytle contends that once he sent proper notice to Pinson and filed a BMV Abandoned Vehicle Affidavit, Pinson no longer had any rights to the property.
 {¶ 16} Lytle's argument is misplaced. The pertinent facts show that Lytle agreed to allow Pinson to keep his car on Lytle's property at no charge. At best, this agreement may be considered a license agreement allowing Pinson to enter Lytle's property for the purpose of storing his vehicle and motor.[1] However, the agreement regarding Pinson's car and motor is independent of his agreement with Lytle to rent the trailer. Lytle may not unilaterally create new terms for an existing agreement.
 {¶ 17} There is no evidence to support the assertion that Pinson abandoned his vehicle or motor on Lytle's property. Testimony presented at trial shows that Pinson had no intention of giving up his interest in the property. Conversely, even after he moved out of the trailer, he frequently returned to check on the car and make sure that there was no problem with keeping it on Lytle's property.
 {¶ 18} Lytle's argument also fails because he did not give Pinson sufficient notice of his intent to obtain title. R.C.4505.101 states:
The owner of any repair garage or place of storage in which a motor vehicle with a value of less than two thousand five hundred dollars has been left unclaimed for fifteen days or more following completion of the requested repair or the agreed term of storage may send by certified mail, return receipt requested, to the last known address of the owner a notice to remove the motor vehicle. * * * Lytle counters that he sent notice via certified mail, return receipt requested, to Pinson's last address at Lytle's trailer on February 24, 2005. Lytle further argues that, had Pinson provided a new address to the post office, the certified letter would have reached him. Therefore, he fulfilled the requirements of R.C. 4505.101 to the best of his abilities.[2]
 {¶ 19} Furthermore, R.C. 4505.101 does not apply to Lytle. Although Lytle is the owner of a storage facility, R.C. 4505.101
may only be invoked "following completion of the requested repair or the agreed term of storage." There was no agreed term of storage between Lytle and Pinson. Lytle contends that Pinson abandoned the vehicle and motor when he moved out the trailer. However, the rental agreement for the trailer was a separate agreement, the termination of which may not trigger the 15-day tolling period for R.C. 4505.101. Therefore, Lytle may not claim that he properly obtained title to Pinson's vehicle under R.C.4505.101.
 {¶ 20} There is no evidence to support Lytle's assertion that Pinson abandoned his vehicle or relinquished his ownership rights. Accordingly, Lytle acted inconsistently with Pinson's ownership interest in the car, thus fulfilling the necessary elements for conversion. We overrule Lytle's second assignment of error.
 {¶ 21} In his third assignment of error, Lytle contends that the trial court erred in determining the ownership of the vehicle. More specifically, the vehicle identification number ("VIN") on the BMV Abandoned Vehicle Affidavit and the VIN on Pinson's title to the vehicle do not match. Lytle noted that "[a]ppellee showed a title to a similar vehicle but with a different VIN, to wit. [sic] 5H17C287714." (Appellant's brief, at 5.) Lytle seems to imply that he obtained title to a different vehicle and therefore, the trial court erred in finding that that vehicle belonged to Pinson. However, we note that Lytle stated earlier in his brief that "the vehicle's identification number (VIN) was a different vehicle than the one described in Appellant's title, but was the vehicle on the premises." Id. at 4. Furthermore, throughout this case, Lytle has argued that Pinson abandoned his car, that he obtained title to Pinson's car, and that he sold Pinson's car. Regardless of the apparent discrepancy between the VINs on the two titles, a preponderance of the evidence indicates that the vehicle Lytle obtained title to and sold and the vehicle owned by Pinson are one and the same. Therefore, we find that the trial court did not err in determining ownership of the vehicle. Lytle's third assignment of error is overruled.
 {¶ 22} In his fourth assignment of error, Lytle asserts that the trial court erred in calculating damages. He further contends that the trial court erred in finding the value of the motor was $7,500, noting that "the court should have known that no used engine outside of a vehicle has such a high value." (Appellant's brief, at 6.) At trial, Pinson testified that the motor was worth $7,000-$8,000. Pinson presented an itemized bill totaling $7,500 to replace the motor he bought from Bill Conrad as additional evidence of the value of Pinson's motor. Lytle did not offer any evidence to refute the value of Pinson's motor. Therefore, the trial court's determination of value is not against the manifest weight of the evidence.
 {¶ 23} The trial court awarded damages to Pinson equaling the market values of both the car and the separate motor. The court found that the car was valued at $2,800 and the motor was valued at $7,500 for a total of $10,300. However, the judgment entry listed the total award as $9,300. This is an obvious mathematical error and we correct it accordingly.
 {¶ 24} Based on the foregoing, we overrule Lytle's first, second, third, and fourth assignments of error. The trial court's judgment entry contains a clerical error. We now correct the error and amend the trial court's judgment entry to reflect the change in damages from $9,300 to $10,300.
Judgment affirmed.
Bryant and Whiteside, JJ., concur.
Whiteside, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] The trial court noted that Pinson and Lytle entered into an oral bailment of Pinson's car and motor. We find this transaction to be a license agreement granting Pinson use of Lytle's property solely for Pinson's benefit. In either situation, Lytle had no right to take possession of Pinson's property.
[2] We note that, although Lytle fulfilled the notice requirements of R.C. 4505.101, he did not fulfill the spirit of the statute. Testimony indicates that Pinson often returned to Lytle's property, giving Lytle ample opportunity to notify Pinson of his intentions. Van Houten testified that he knew where Pinson had moved, that Lytle would know Van Houten had that information, yet Lytle never asked. The facts indicate that, although Lytle complied with the notice requirements, he may have done so in a way that he knew Pinson would not actually receive notice.