THE STATE OF OHIO, APPELLEE, *v.* UNGER, APPELLANT.

[Cite as State v. Unger (1981), 67 Ohio St. 2d 65.]

(No. 80-1297—Decided July 1, 1981.)

*Mr. James R. Livingston,* prosecuting attorney, and *Mr. Charles H. Sell,* for appellee.

*Mr. J. Tullis Rogers* and *Mr. Harry R. Reinhart,* for appellant.

CELEBREZZE, C. J. In support of his argument that his conviction should be overturned, appellant contends that (1) the trial court abused its discretion in refusing to grant the second continuance; (2) his confession should be suppressed because he was arrested and transported to the Miami County Jail in contravention of R. C. 2935.14; and (3) his automobile was unconstitutionally seized.

The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion. *Ungar* v. *Sarafite* (1964), 376 U. S. 575, 589; *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 101. See, also, *United States* v. *Burton* (C.A. D.C. 1978), 584 F. 2d 485, certiorari denied 439 U. S. 1069; *United States* v. *Allen* (C.A. 6, 1975), 522 F. 2d 1229, certiorari denied 423 U. S. 1072; *Giacalone* v. *Lucas* (C.A. 6, 1971), 445 F. 2d 1238, certiorari denied 405 U. S. 922. As the Supreme Court stated in *Ungar* v. *Sarafite, supra,* at 589: "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."

Appellant urges us to adopt, in reviewing the trial court's exercise of discretion, a balancing test which takes cognizance of all the competing considerations. We wholeheartedly agree. Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.

In evaluating a motion for a continuance, a court should note, *inter alia:* the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or

whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case. See *United States* v. *Burton, supra; Giacalone* v. *Lucas, supra.*

We have carefully examined the record in this case and conclude that the trial court lawfully exercised its discretion in refusing to grant the second continuance.

Initially, it should be noted that the appellant was informed, well in advance of any trial date, of his prerogative to have an additional psychiatric examination. Indeed, on March 14, 1979, the trial court expressly advised him as follows: "The defendant is hereby informed that he may have independent evaluation and that if unable to obtain independent expert evaluation, it will be obtained for him, at public expense, if he is indigent." By the time of the request for the second continuance, appellant had had approximately two months to secure his own examination. This he failed to do.

Secondly, less conspicuous but more important is the fact that this delay was occasioned by the defense's tactics, as evidenced by the following statements of defense counsel at the hearing vis-a-vis the second continuance:

"Well, we wanted....My thinking on this had to do with tactics. I wanted an examination made to be paid by my client, my client's family. I did not want somebody to be paid by the court or by the county. I wanted an evaluation made by somebody being paid by my clients who would be my client's evaluator and who would know where the money was coming from. And I think that's an important consideration at times when there are evaluations being made, whether it's in a criminal case or in a civil case.

"* * *

"* * * I wanted the psychiatrist to know that this money was coming from my client and that if there was possible testimony forthcoming, that my client was the one that was going to be coming up with the funds. And I thought that was an important tactical move and I still hold by it."

We are unable to find—and are unwilling to create—precedent establishing the proposition that a trial court is under a duty to adapt its schedule to defense's tactics and

strategy. Appellant's logic on this point is like a wheel of fortune — where such reasoning would stop, no one could know.

Thirdly, the record is totally devoid of any indication of what the potential delay might have been if appellant had successfully secured the second continuance. Conspicuous by its absence from the record is any request for a third trial date or any indication of now long the evaluation by another psychiatrist would have taken.

Finally, at the time the second continuance was requested, the Dayton Area Forensic Psychiatry Services Unit had already furnished the trial court with a report demonstrating that appellant was sane at the time he murdered his victim. Due process does not require that an examination of a defendant, to determine his mental condition, be conducted by doctors other then those associated with state institutions. *State* v. *Wallace* (Me. 1975), 333 A. 2d 72.

For all the foregoing reasons, therefore, we find that the trial court did not abuse its discretion in refusing to grant the second continuance.

We summarily reject appellant's argument that his confession should be suppressed because he was transported from Darke County to Miami County in contravention of R. C. 2935.14.[1] We also find it unnecessary to address the issue, raised by appellant below, that R. C. 2935.14 conflicts with Crim. R. 4(E)(2).[2] Assuming, without deciding, that R. C.

---

[1] R. C. 2935.14 provides:

"If the person arrested is unable to offer sufficient bail or, if the offense charged be a felony, he shall, prior to being confined or removed from the county of arrest, as the case may be, be speedily permitted facilities to communicate with an attorney at law of his own choice, or to communicate with at least one relative or other person for the purpose of obtaining counsel (or in cases of misdemeanors or ordinance violation for the purpose of arranging bail). He shall not thereafter be confined or removed from the county or from the situs of initial detention until such attorney has had reasonable opportunity to confer with him privately, or other person to arrange bail, under such security measures as may be necessary under the circumstances.

"Whoever, being a police officer in charge of a prisoner, or the custodian of any jail or place of confinement, violates this section shall be fined not less than one hundred nor more than five hundred dollars or imprisoned not more than thirty days, or both."

[2] Crim. R. 4 (E) (2) provides:

"Arrest without warrant. Where a person is arrested without a warrant the arresting officer shall, except as provided in subdivision (F), bring the arrested person without unnecessary delay before a court having jurisdiction of the offense, and shall

2935.14 supersedes Crim. R. 4(E)(2) and was violated, this, by itself, would not be sufficient to invoke the exclusionary rule. As this court recently ruled in *Kettering* v. *Hollen* (1980), 64 Ohio St. 2d 232, at pages 234-235:

"The exclusionary rule has been applied by this court to violations of a constitutional nature only. In *State* v. *Myers* (1971), 26 Ohio St. 2d 190, 196, this court enunciated the policy that the exclusionary rule would not be applied to statutory violations falling short of constitutional violations, absent a legislative mandate requiring the application of the exclusionary rule. In *State* v. *Downs* (1977), 51 Ohio St. 2d 47, 63-64, the violation of Crim. R. 41 with respect to the return of a search warrant was described as non-constitutional in magnitude and the exclusionary rule was not applied. Also, in *State* v. *Davis* (1978), 56 Ohio St. 2d 51, it was held that fingerprint evidence obtained in violation of a statute does not have to be excluded.

"It is clear from these cases that the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights."

Similarly, we summarily reject appellant's contention that his automobile was unlawfully seized. The critical consideration here is, as the trial court found, that the authorities did not search the interior of the vehicle until after a valid search warrant had been secured. Under the circumstances of this case, we find that the impoundment of appellant's vehicle was reasonable and consistent with the tests mandated by controlling constitutional precedent of the United States Supreme Court. See *Cardwell* v. *Lewis* (1974), 417 U. S. 583.

For all the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

STEPHENSON, P. BROWN, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting for W. BROWN, J.

file or cause to be filed a complaint describing the offense for which the person was arrested. Thereafter the court shall proceed in accordance with Rule 5."