**In re T.C.**

[Cite as *In re T.C.* (2000), 140 Ohio App.3d 409.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–2000–52.

Decided Dec. 13, 2000.

*Paul D. Rizor,* for appellant Deanna Shane.

*Alissa M. Iseman,* for appellant Vincent Lee.

*John J. Hopkins,* for appellee Allen County Children Services Board.

*John M. Leahy, Jr.,* guardian *ad litem.*

———————

THOMAS F. BRYANT, Judge.

This appeal is taken by appellants Deanna Shane and Vincent Lee from the judgment entered by the Court of Common Pleas of Allen County granting the Allen County Children Services Board's motion for permanent custody of the minor child, T.C.

In early January 1999, Deanna Shane ("Deanna") reported an incident concerning the sexual abuse of her child, T.C. by her boyfriend to the Allen County Children Services Board ("ACCSB"). On January 14, 1999, after thorough investigation of the incident, the ACCSB immediately provided shelter care to T.C. pursuant to statute and thereafter moved for a shelter care hearing. On January 15, 1999, upon evidence presented at the shelter care hearing, the magistrate found:

"[R]easonable efforts were made by the Allen County Children Services Board to notify the parents, guardians or custodians of the child(ren)'s possible shelter care placement and the reasons for the same.

"[T]here are reasonable grounds to believe that the child is in immediate danger from his surroundings and that his removal is necessary to prevent immediate or threatened physical harm."

In addition the Magistrate recommended appointment of a guardian *ad litem* for T.C. and that she remain in the shelter care of the ACCSB. The trial court approved the magistrate's recommendation and so ordered.

On January 15, 1999, the ACCSB filed a complaint in the Court of Common Pleas of Allen County, Juvenile Division, alleging that T.C. was a dependent, neglected, and abused child. In so alleging, the ACCSB asked that the court grant temporary custody of T.C. to the ACCSB. On that same day, the ACCSB requested service of the complaint on three individuals including Deanna, Vincent Lee, alleged father ("Lee"), and "any unknown, unnamed father." The request filed by the ACCSB further stated that Lee's whereabouts were unknown and in an affidavit to obtain service by publication attached to the request, affiant Pam Meihls, being sworn, stated that Lee could not be reached, that several attempts had been made to locate him, and requested that service upon Lee be made by publication. On January 29, 1999, the trial court granted Meihls's motion for service by publication.

On February 19, 1999, the magistrate held an adjudicatory hearing to determine T.C.'s status as an abused, dependent, and neglected child. After review of the evidence presented, the magistrate issued a decision and findings of fact. The magistrate found T.C. to be abused, neglected, and dependent and further found that she should remain under the shelter care of the ACCSB. The decision is in part:

"*SPECIFIC FINDINGS RE: DEPENDENCY:* The child's mother is transient and essentially homeless, with no permanent established place of residence. She resided for a short period of time with the children at Samaritan House, but was asked to leave. The mother stipulates to a finding of dependency.

"*SPECIFIC FINDINGS RE: NEGLECT:* The child was the victim of sexual abuse by the boyfriend of the mother. The mother continued to permit access to the child by her boyfriend, which places the child at risk. The mother stipulates to a finding of neglect.

"*SPECIFIC FINDINGS RE: ABUSE:* The child reports that she was the victim of sexual activity with the mother's boyfriend, including sexual intercourse. The mother stipulates to a finding of abuse."

The magistrate set the matter for dispositional hearing on April 5, 1999. On March 5, 1999, the trial court adopted the magistrate's decision and found "that said child is * * * dependent, neglected and abused as alleged in the Complaint filed herein."

On April 5, 1999, the magistrate held a dispositional hearing wherein he recommended that temporary custody of T.C. be granted to the ACCSB. On June 1, 1999, the court adopted the magistrate's decision and further held that the order of temporary custody was to terminate on January 15, 2000.

On December 6, 1999, the ACCSB filed a motion requesting permanent custody of T.C. "for the reasons that the child cannot be placed with the parents, because:

"Following placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be place[d] outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home."

Following the filing of the complaint the ACCSB requested service upon Deanna, Lee, and "any unknown, unnamed father." Through the efforts of the agency, the address of Lee had been ascertained and he was served with a copy of the complaint at the Lima Correctional Institution, where he was serving a four-year sentence for failure to appear. Deanna and Lee were both afforded the assistance of counsel at the expense of the state.

On May 2, 2000, the trial court held a hearing concerning the permanent custody of T.C. Both Lee and Deanna were present. Both parties were informed and acknowledged the fact that if permanent custody were awarded to the ACCSB, their parental rights would be terminated pursuant to statute. Both parties offered evidence and vigorously participated in the defense of their parental rights. The trial was continued for June 6, 2000. Before the trial reconvened in June, Deanna violated her probation and was ordered incarcerated in the Allen County Jail for a period of sixteen months.[1]

---

1. The crimes that resulted in Deanna's probation and subsequent violation and incarceration were not elicited through her testimony.

On June 6, 2000, after appearing before the court, Lee asked the court that his attorney be dismissed and that he be allowed to defend his own interests. Further he asked the court to continue the trial so that he might have time to prepare. It should be noted that Lee had never been adjudicated the father of T.C. and that during the seven years leading up to this hearing there is no record showing that he had attempted to establish his paternity.[2] The court granted Lee's motion to dismiss his attorney but refused to continue the trial. As the trial continued, both Lee and Deanna presented evidence and questioned witnesses. The report and recommendation of the guardian *ad litem* assigned to T.C. was admitted into evidence.

On June 19, 2000, the trial court entered judgment granting the ACCSB permanent custody of T.C. and terminating the parental rights of Deanna and Lee. The judgment entry is in part:

"Upon further consideration of those enumerated factors set forth in Ohio Revised Code Section 2151.414(E), the Court finds the existence of those conditions as described in O.R.C. 2151.414(E)(1), mother only, O.R.C. 2151.414(E)(4), mother and alleged father, O.R.C. 2151.414(E)(12), alleged father only, and O.R.C. 2151.414(e)(14), mother only and that therefore said child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents."

On appeal from that judgment entry, Deanna and Lee each assert different assignments of error. Each party's assertions will be discussed separately.

On appeal Deanna asserts the following sole assignment of error:

"The trial court abused its discretion in failing to give proper consideration to the family relationship of the child."

Simply stated, Deanna claims that the trial court did not consider the mother-child relationship between T.C. and Deanna when making its decision to terminate Deanna's parental rights. However, the record reveals the contrary assertion. Specifically, the record is replete with testimony regarding the relationship between T.C. and Deanna. Furthermore, the trial court in its entry granting permanent custody of T.C. to the ACCSB stated:

"Upon consideration of the evidence presented and the recommendation of the child's Attorney/Guardian Ad Litem * * *

---

2. In his testimony at trial Lee claimed several times that he had tried to establish paternity with regard to his alleged daughter T.C. but never did. There is no evidence in the record nor was there any presented at trial that he in fact did attempt through the court to move for a paternity test. His attorney before being dismissed offered evidence that he had tried to get a paternity test but there had been no response to his letter of request.

"Upon further consideration of those enumerated factors set forth in the Ohio Revised Code * * *

"And in further consideration of those enumerated factors set forth in O.R.C. 2151.414(D) relative to the evidence presented the Court finds that it would be in the child's best interest for the Court to grant the Motion for Permanent Custody accordingly."

Deanna fails to show how the record supports her assertion. As stated above, the record reveals evidence to the contrary. No error having been shown, Deanna's sole assignment of error is overruled.

On appeal Lee presents four assignments of error.

"1. Whether the trial court erred in terminating the parental rights of the alleged father when the Allen County Children Services Board failed to make diligent efforts to locate him for service."

■ In his first assignment of error, Lee claims that the trial court erred in terminating his parental rights because it did not have jurisdiction to do so. In support of his contention that the trial court lacked jurisdiction, Lee makes two arguments. First, he argues that when the complaint for temporary custody was filed by the ACCSB he was in prison and was served notice of the temporary custody hearing by publication. He argues that service by publication was faulty because the ACCSB could have easily learned his address and provided personal service of notice. Second, Lee argues that the temporary custody order is void and thus the permanent custody order is also void because the invalid use of service by publication in the initial temporary custody hearing resulted in the trial court's acting without ever obtaining valid personal jurisdiction over him.

The ACCSB argues that even if this court assumes that Lee is correct in the contention that the initial service was defective, because Lee received proper service and notice for the permanent custody hearing and did appear, was afforded and attorney and failed to object to the initial service of process he has waived all issues relating to service and personal jurisdiction for the temporary custody hearing.

■ It is a principle that forms the foundations of the judicial process that for a court to acquire jurisdiction over a party to the action, there must be a proper service of summons. *Lincoln Tavern, Inc. v. Snader* (1956), 165 Ohio St. 61, 64, 59 O.O. 74, 75–76, 133 N.E.2d 606, 609–610. "Absent notice, the judgment of the court is void." *In re Miller* (1986), 33 Ohio App.3d 224, 515 N.E.2d 635, citing *In re Frinzl* (1949), 152 Ohio St. 164, 177, 39 O.O. 456, 461–462, 87 N.E.2d 583, 589–590; *Lewis v. Reed* (1927), 117 Ohio St. 152, 160–164, 157 N.E. 897, 899–900.

■ In juvenile proceedings when the residence of a party is unknown, service by publication is permissible. Juv.R.16(A); Civ.R. 4.4(A). In order to obtain service by publication, an affidavit of a party to the action must state that the residence is unknown and cannot be ascertained with reasonable diligence. *In re Cowling* (1991), 72 Ohio App.3d 499, 502, 595 N.E.2d 470, 472–473.

Furthermore, in *In re Jennifer L.* (May 1, 1998), Lucas App. No. L–97–1295, unreported, 1998 WL 230808, the Sixth District held that arguments relating to personal jurisdiction or insufficient service of process in the initial hearing regarding temporary custody are waived in a subsequent hearing for permanent custody if the "father was given timely personal service that notified him of the hearing on the motion filed * * * for permanent custody [and] he appeared in person and requested an attorney be appointed to represent him at the permanent custody hearing," and that attorney "did not make any assertions that as a result [of improper notice at the temporary custody hearing] the temporary custody order was void." *Jennifer* at *3. Furthermore, it should be noted that the Supreme Court of Ohio has stated that a permanent custody order has more "drastic consequences" than does a temporary custody order. *Id.* at *3, citing *In re Frinzl* (1949), 152 Ohio St. 164, 172, 39 O.O. 456, 459–460, 87 N.E.2d 583, 587.

The record reveals that a summons and complaint for permanent custody was properly served on Lee in the Lima Correctional institution. Further, Lee was afforded an attorney pursuant to statute and, finally, a thorough examination of the transcripts reveals that Lee's attorney may have referred to a failure of service by publication in passing but at no time did Lee or his attorney object to the jurisdiction of the court for failure to properly serve a summons at the initial hearing on temporary custody. Therefore, the issue of proper service at the initial hearing on temporary custody has been waived.

However, it should be noted that the request for service by publication was made by a party to the action and appears on its face to fulfill the requirements of Juv.R.16(a). The affidavit attached to the request for service by publication stated:

"Vincent Lee and Any Unknown, Unnamed Father is the alleged father of said child herein; that the last known place of residence is unknown and that service of summons cannot be had despite several attempts by your affiant to locate same that this affidavit is made in compliance with Section 2151.29 of the Revised Code of the State of Ohio."

No error having been shown, Lee's first assignment of error is overruled.

"2. If the trial court abused its discretion whereby not granting child's father request for continuance to prepare a defense, retrieve relevant subpoenas, relevant evidentiary materials, and new counsel in violation of Article I, Section

16 of the Ohio Constitution and the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution."

█ In his second assignment of error, Lee claims that the trial court erred by not granting his motion to continue. Specifically, Lee argues that because he chose to dismiss his counsel the trial court should have granted him requisite time to prepare in the absence of counsel.

█ In *State v. Beuke* (1988), 38 Ohio St.3d 29, 526 N.E.2d 274, the court stated that the granting of a continuance is a matter within the sound discretion of the trial court, and will be disturbed on appeal only if there has been an abuse of discretion.

█ Further, in *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078, the court indicated that in determining whether the trial court has abused its discretion, appellate courts should apply a balancing test which takes cognizance of all the competing considerations.

█ "In evaluating a motion for a continuance, a court should note, *inter alia* the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." (Citations omitted.) *Id.* at 67–68, 21 O.O.3d at 43, 423 N.E.2d at 1080.

The record discloses that on May 2, 2000, the trial court continued the permanent custody hearing after counsel and parties indicated that at least three additional witnesses intended to testify. On June 6, 2000, the court reconvened *In re T.C.* Before the hearing began, the court inquired as to preliminary matters. Counsel for Lee informed the court that Lee had fired him. Upon inquiry from Lee and his counsel and after a short recess, the court accepted Lee's decision and dismissed his counsel. Lee proceeded to ask for a continuance. The court refused to grant a continuance and the hearing ensued.

Lee now urges this court to find that the trial court abused its discretion in failing to grant a continuance. As stated above, in order to determine if the trial court did indeed abuse its discretion by failing to grant Lee a continuance, we must apply a balancing test that considers all of the competing circumstances. After such consideration, we find no abuse of discretion.

The record reveals that Lee had previously requested a continuance from the trial court in February. The court granted Lee's request and continued the trial until May 2, 2000. In May 2000, the trial court again continued the hearing so that Lee and Deanna's attorneys would have more time to gather witnesses to testify on their behalf. Furthermore, the hearing at issue deals with the termination of parental rights and permanent custody of T.C.. The ACCSB filed for permanent custody in December 1999, the trial had twice been continued in Lee's favor, T.C. remained under the temporary supervision of the ACCSB, and potential adoptive parents were awaiting the outcome. Finally, it should be noted that Lee contributed to the circumstances giving rise to the request for the continuance by dismissing his attorney on the day of the second hearing. In light of the foregoing circumstances surrounding the case, a test balancing the competing interests in this case does not support a determination that the trial court abused its discretion.

No abuse of discretion having been shown, Lee's second assignment of error is overruled.

"3. If the trial court abused its discretion whereby failing to appoint new counsel after being placed on notice that present counsel has failed to create a recognizable defense in his best interest in violation of Article I, Sections 10 and 16 of the Ohio Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution."

Lee's third assignment of error is unclear but we understand it to be that his court-appointed attorney failed to provide him with effective assistance of counsel and thus violated his constitutional rights under the Ohio and United States Constitutions.

R.C. 2151.352 and Juv.R. 4(A) require that parents be represented by counsel in permanent custody cases. Furthermore, R.C. 2151.325 requires that if parents are indigent, then counsel must be appointed by the court. In addition, the Due Process and Equal Protection Clauses of the United States and Ohio Constitutions require that counsel representing parents during permanent custody proceedings be effective. *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 15 O.O.3d 3, 399 N.E.2d 66.

In *Jones v. Lucas Cty. Children Serv. Bd.* (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471, 472–473, the court held that the two-part test announced in *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 for determining ineffective assistance of counsel in criminal cases is equally applicable in actions by the state to force the permanent termination of parental rights. As set forth in *Jones*, the *Strickland* test requires:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable."

The United States Supreme Court cautioned in *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–695 that

"Judicial scrutiny of counsel's performance must be highly deferential. * * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption, that under the circumstances, the challenged action 'might be considered sound trial strategy.' See *Michel v. Louisiana, supra* [(1955)], 350 U.S. [91] at 101 [76 S.Ct. 158, at 164, 100 L.Ed. 83, at 93]."

On appeal, Lee claims that he was denied effective assistance of counsel because counsel did not (a) subpoena any of Lee's family members who wish to adopt T.C. or in the alternative obtain affidavits from them; (b) secure paternity testing; (c) interview any of opposing parties witnesses; (d) seek a continuance to perform these duties; (e) meet with Lee to discuss relevant evidence or witnesses; (f) did not turn over records relevant and necessary to Lee's continued representation of himself in the case.

The record does not support any of Lee's accusations. Quite to the contrary, Lee's attorney did indeed seek a continuance on February 6, and again on May 2. Furthermore, Lee's attorney stated that he had indeed filed the necessary papers to establish paternity but had not heard back from the agency; that he had interviewed several of Lee's relatives but did not feel that their testimony or affidavits would be valuable to the case and, in fact, may impugn Lee's arguments. Finally, the record contains no evidence in support of Lee's contention that his counsel failed to turn over documents necessary for his continued self-representation.

Lacking any evidence in support of his assertions that his counsel was ineffective, Lee cannot overcome the presumption that his counsel's performance was "reasonable". No error having been shown, we overrule Lee's third assignment of error.

"4. If the trial court abused its discretion whereby not deciding all the relevant factors of O.R.C. § 2151.415 nor made any attempt to do so under a clear and convincing evidence standard therefore violating appellant's rights protected under Article I, Sections 10 and 16 of the Ohio Constitution and the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. [*Sic.*]"

In his final assignment of error, Lee claims that the trial court improperly applied the requirements of R.C. 2151.414 and erred in terminating his parental rights.

At the outset we observe that decisions concerning child custody matters rest within the sound discretion of the trial court. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 523 N.E.2d 846. This is especially true because the judge, acting as the trier of facts, is in the best position to observe witnesses, weigh evidence, and evaluate testimony. *In re Brown* (1994), 98 Ohio App.3d 337, 648 N.E.2d 576. Therefore, a trial court's determination in a custody proceeding is subject to reversal only upon a showing of abuse of discretion. *Miller*, 37 Ohio St.3d at 74, 523 N.E.2d at 849.

A trial court that is conducting a hearing on a motion for permanent custody must follow the guidelines set forth in R.C. 2151.414. Pursuant to R.C. 2151.353(A)(4), the court may grant such a motion if two determinations are made. The court must determine by clear and convincing evidence, after a child has been found by the court to be neglected, dependent, or abused, that it is in the child's best interest to grant the movant permanent custody "and that any of the following apply":

"(1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;

"(2)The child is abandoned and the parents cannot be located;

"(3) The child is orphaned and there are no relatives of the child who are able to take permanent custody." R.C. 2151.414(B)(1) through (3).

When determining what is in the best interest, R.C. 2151.414(D) mandates that the court consider "all relevant factors, including, but not limited to, the following":

"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

"(2) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;

"(3) The custodial history of the child;

"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."

Further, if the court has determined, based on R.C. 2151.414(B)(1), that a child cannot or should not be placed with the parents within a reasonable time, the court must consider all relevant evidence, finding, by clear and convincing evidence, that one of the following conditions exists:

"(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *

"* * *

"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

"* * *

"(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional or mental neglect.

"* * *

"(16) Any other factors the court considers relevant.  R.C. 2151.414(E)"

The record reveals that the trial court found in accordance with the statute that T.C. was not "abandoned or orphaned and" that T.C. "cannot be placed with either of her parents within a reasonable time or should not be placed with her parents."  In making that determination, the trial court relied on the testimony of several witnesses at trial, including the alleged father, Lee, and mother Deanna.  Furthermore, the trial court examined "the child's best interests" in accordance with the statute.

Finally, the record discloses clear and convincing evidence to support the granting of permanent custody to the ACCSB.  Specifically, Deanna had continuously failed to remedy the conditions causing T.C. to be placed outside the home despite the diligent efforts of the ACCSB to reunite T.C. with Deanna;  both Deanna and Lee demonstrated a lack of commitment toward the child by failing

to regularly support, visit, or communicate with the child when able to do so; both Deanna and Lee are currently incarcerated; and, finally, Deanna and Lee, being incarcerated, are unable to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

No error having been shown, Lee's final assignment of error is overruled and the judgment of the Allen County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SHAW and WALTERS, JJ., concur.