OPINION *Page 2 
{¶ 1} Appellant Sherry Fogel ("Sherry") appeals from the June 5, 2007 Judgment Entry of the Court of Common Pleas of Union County, Juvenile Division, terminating her parental rights and granting permanent custody of James Arms ("James") (D.O.B. 3/2/05) to the Union County Department of Job and Family Services ("UCJFS").
 {¶ 2} This matter stems from events occurring on June 1, 2006 in Marysville, Ohio. On this date, Sherry left James in the care of a relative and was to return and pick him up, but failed to do so. The relative was unable to contact or locate Sherry and was not able to care for James herself, so she called UCJFS. After being unable to contact Sherry, the UCJFS requested an emergency ex-parte order for temporary custody of James. On June 2, 2006 the juvenile court magistrate issued an Ex Parte Order granting the UCJFS's motion for emergency shelter care and placing James in the temporary custody of the UCJFS. (See June 2, 2006 Ex Parte Order as contained in Case No. 20630049).
 {¶ 3} On June 5, 2006 the UCJFS filed a complaint alleging that James was neglected and dependent pursuant to Ohio Revised Code sections2151.03 and 2151.04. Also on this date, the magistrate conducted a shelter care hearing wherein the magistrate ordered that James remain in the shelter care of the UCJFS. *Page 3 
(See June 5, 2006 Magistrate's Order: Order of Shelter Care as contained in Case No. 20630049).
 {¶ 4} On August 2, 2006 the juvenile court conducted an adjudicatory hearing on the merits of the UCJFS's complaint. Although Sherry had been notified of the proceedings, she was not present at the hearing. At the close of the evidence, the court adjudicated James neglected and dependent as alleged in the complaint and set a dispositional hearing for August 30, 2006. The court ordered that James remain in the temporary custody of the UCJFS. (See August 10, 2006 Judgment Entry, as contained in Case No. 20630049).
 {¶ 5} On August 25, 2006 the UCJFS filed a motion to amend the complaint to request a disposition of permanent custody. As grounds for this motion the UCJFS stated that the "mother and/or father have had their parental rights previously terminated for at least three other children in Franklin County, Ohio" and that "the parents did not appear for the adjudication hearing and have not shown any interest in this child since the Agency has been involved." Accordingly, the motion stated that "[pursuant to Ohio Revised Code Section 2151.41.9, because the mother and/or father have had their parental rights previously terminated, the Agency does not need to make reasonable efforts to reunify with the parents." *Page 4 
 {¶ 6} Prior to proceeding with the dispositional hearing on August 30, 2006 the court met with the attorneys in chambers wherein counsel for the UCJFS advised the juvenile court that the agency would be dismissing the original complaint without prejudice so as to re-file the case due to the time constraints of Juvenile Rule 34(A) and R.C. 2151.35(B)(1). The UCJFS also advised the court that it did not wish to proceed with the dispositional hearing and instead wanted to proceed under the amended complaint which requested a disposition of permanent custody. The court was further advised that neither parent was present for the dispositional hearing scheduled for that date. Accordingly, the juvenile court granted the UCJFS's motion to amend the complaint herein to request a disposition or permanent custody and continued the dispositional hearing. (See August 30, 2006 Journal Entry as contained in Case No. 20630049).
 {¶ 7} On August 30 2006 the UCJFS filed its amended complaint, requesting permanent custody. However, on September 1, 2006 the UCJFS filed a motion to dismiss this matter (Case No. 20630049) as the same could not be fully heard within the 90 day time frame provided for in the Juvenile Rules. The juvenile court subsequently granted the motion to dismiss without prejudice. (See September 1, 2006 Judgment Entry as contained in Case No. 20630049).
 {¶ 8} On September 1, 2006 the UCJFS filed a new complaint, in Case No. 20630088, alleging that James was neglected and dependent as defined in *Page 5 
R.C. 2151.03 and 2151.04. The complaint stated that Sherry and James' father (also named James Arms) had previously had their parental rights terminated for other children in Franklin County, thus, the UCJFS was not required to show that "reasonable efforts" had been made to reunify the child with his parents, pursuant to R.C. 2151.419. Accordingly, the UCJFS requested permanent custody of James.
 {¶ 9} On October 31, 2006 James was adjudicated neglected and dependent based upon the allegations contained in the new complaint. This matter proceeded to a dispositional hearing on November 16, 2006. Sherry was not present at the hearing although she was represented by counsel. Sherry's attorney made an oral motion to continue the hearing due to Sherry's absence and advised the court that Sherry had called her caseworker earlier that morning to request a continuance based upon the fact that James' father had poured hot coffee on her which required medical attention. The magistrate overruled the motion to continue but noted for the record that Sherry had contacted her caseworker and requested a continuance. At the close of evidence and testimony, the magistrate found that it would be in James' best interests that permanent custody be granted to the UCJFS.
 {¶ 10} On January 2, 2007 the magistrate filed a Magistrate's Decision and ordered that permanent custody of James should be granted to the UCJFS. Sherry *Page 6 
filed an objection to the Magistrate's Decision alleging that the magistrate erred by failing to continue the dispositional hearing after an oral motion to continue was made by Sherry's counsel at the hearing. On May 7, 2007 the juvenile court issued a Judgment Entry overruling Sherry's objection to the Magistrate's Decision. On June 5, 2007 the juvenile court issued a Judgment Entry adopting the January 2, 2007 Magistrate's Decision, thereby terminating Sherry's parental rights and awarding permanent custody of James to the UCJFS.
 {¶ 11} Sherry now appeals, asserting one assignment of error.
 ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GRANT SHERRY FOGEL'S REQUEST TO CONTINUE THE DISPOSITIONAL HEARING.
 {¶ 12} In her sole assignment of error, Sherry argues that the trial court abused its discretion by failing to grant her request for a continuance of the dispositional hearing and allowing the hearing to proceed without her attendance which denied her the opportunity to participate and contest the complaint.
 {¶ 13} Juvenile Rule 23 provides that "[continuances shall be granted only when imperative to secure fair treatment for the parties." The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge and an appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion. State v. Unger (1981), 67 Ohio St.2d 65, 67,423 N.E.2d 1078; In re Zhang (1995), 135 Ohio App.3d 350, 354, *Page 7 734 N.E.2d 379; In re Miller, 3rd Dist. No. 2-04-02,2004-Ohio-3023. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 14} In State v. Unger, supra, the Supreme Court of Ohio indicated that in determining whether the trial court has abused its discretion, appellate courts should apply a balancing test which takes cognizance of all the competing considerations.
 In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case. (Citations omitted).
Unger, 67 Ohio St.2d at 67-68; see also In re T.C. (2000),140 Ohio App.3d 409, 747 N.E.2d 881
 {¶ 15} It is undisputed that Sherry was not present at the August 31, 2006 dispositional hearing. At the start of the hearing, the magistrate determined that Sherry had been personally served with a copy of the adjudicatory entry which had *Page 8 
the correct dispositional hearing date on it. Sherry's attorney then made an oral motion to continue the dispositional hearing which was opposed by the State. The motion to continue was based upon Sherry's absence and based upon her attorney's understanding that Sherry had called in and spoke with someone at the court. The court advised Sherry's attorney that she had not in fact, called the court, rather, she had called her UCJFS caseworker, Tonya Bavard ("Tonya").
 {¶ 16} Tonya was subsequently sworn in by the court and presented the following testimony:
 Tonya: I first received a voice mail from her and it was at 7:00 a.m. and in the voice mail message she was, you know, obviously crying and upset . . . and she really wanted a continuance today. It wasn't a good day for her to come to court. James Arms had hit her and poured a cup of coffee on her. She was in the car with her mother at the time that she — she said in this voice mail message. And she just didn't think that it was going to be a good day to come for a court hearing. She said that she knew that her son comes first before James Arms, the father, but that right now she needs to take care of herself. And subsequent to that I returned Sherry's phone call about, I think it was about 7:15 when I called her back and her mom answered the phone. Her mother's name is Mary. And she recognized my voice when I asked for Sherry. And she started begging with me, can we get a continuance? Sherry's so upset.
 The Court: Did you get to talk to Sherry?
 Tonya: I did.
 * * *
 Tonya: Okay. Well then Sherry got on the phone and she explained to me that, again, James had hit her, poured a cup of coffee on her. Reiterated that she just didn't think it was going to be a good day to make it. She didn't think she was going to be *Page 9 able to come. But she wanted to do whatever she could to get her son back. And then I advised her that she needed to contact her attorney immediately. And I provided her with his phone number and explained that this was something that she definitely needed to talk with her attorney about. And when we hung up, the conversation ended by her saying that she would — she would call her attorney.
 The Court: Do you recognize Sherry Fogle's voice on the phone?
 Tonya: Oh yes.
 {¶ 17} The magistrate then permitted the parties to question Tonya, whereupon James' Guardian Ad Litem asked Tonya if Sherry had indicated that she was going to go to the hospital after being hit and having coffee poured on her. Tonya testified that Sherry did not mention going to the hospital and only indicated that she had checked out of the hotel that she and James had been staying in and mentioned that she wanted to look into pressing charges against James.
 {¶ 18} The magistrate then stated as follows:
 Based upon the testimony I've heard . . . I'm going to overrule the motion and not continue the case at this point. It's pretty clear that she knew about it. She obviously knew, based upon the testimony I heard, the level of the type of case we were doing and how it would affect the child. But she hasn't been — she didn't come to the adjudication. She's not here now. I have no belief based upon her attendance in the past that she'd show up if we continued it. So I — overruled. *Page 10 
 {¶ 19} Additionally, in its May 7, 2007 Judgment Entry overruling Sherry's objections to the Magistrate's Decision, the juvenile court specifically found as follows:
 Ms. Fogle also failed to attend the Adjudicatory Hearing held on October 31, 2006, despite her caseworker's attempts to provide transportation to that hearing. In addition to Ms. Fogle's inconsistent Court attendance, it is important to note that this was a permanent custody hearing, and a continuance would only serve to further disrupt the life and stability of the child, James Arms. A continuance was not imperative to secure fair treatment of the parties, as Ms. Fogle was adequately represented by counsel in the hearing.
 {¶ 20} Moreover, we note that the record reflects that Sherry was represented by counsel at the August 31, 2006 dispositional hearing and that there are no allegations before this court that Sherry's counsel was ineffective in his representation of her interests. Additionally, we note that neither Sherry nor her attorney presented any evidence in support of her objections to the Magistrate's Decision to corroborate the fact that she was indeed prevented from attending the dispositional hearing because of injury.
 {¶ 21} Based on the foregoing circumstances surrounding the present case, as well as an application of the balancing test set forth inState v. Unger, supra, we find that the record does not support Sherry's contention that the trial court abused its discretion in denying her motion for a continuance. Accordingly, Sherry's sole assignment of error is overruled. *Page 11 
 {¶ 22} Therefore, the June 5, 2007 Judgment Entry of the Court of Common Pleas of Union County, Juvenile Division, terminating Sherry's parental rights and granting permanent custody of James Arms to the Union County Department of Job and Family Services is affirmed.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur. *Page 1