[Cite as *Clay v. Lakeview Farms, Inc.*, 2010-Ohio-603.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

**DEREK CLAY,**

    **PLAINTIFF-APPELLANT,**

    **v.**                            **CASE NO.  1-09-55**

**LAKEVIEW FARMS, INC.,**

    **DEFENDANT-APPELLEE,**
    **-and-**                            **O P I N I O N**

**MARSHA P. RYAN, ADMINISTRATOR,**

    **DEFENDANT-APPELLEE.**

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CV2008 1753**

**Judgment Affirmed**

**Date of Decision:  February 22, 2010**

**APPEARANCES:**

    *James C. Ayers*  **for Appellant, Derek Clay**

    *Andrew J. Alatis*  **for Appellee, Adm., OBWC**

    *Peter N. Lavalette*  **for Appellee, Lakeview Farms, Inc.**

**ROGERS, J.**

{¶1} Plaintiff-Appellant, Derek Clay, appeals from the judgment of the Court of Common Pleas of Allen County denying his motion for a continuance of the trial and dismissing his claim, with prejudice, to receive workers' compensation benefits. On appeal, Clay argues that the trial court erred in denying his motion for a continuance and subsequently dismissing his case with prejudice for failure to prosecute pursuant to Civ.R. 41(B)(1) where the dismissal resulted in extreme prejudice to him, producing a reversal of his workers' compensation benefits. Based on the following, we affirm the judgment of the trial court.

{¶2} In November 2007, Clay filed an application for workers' compensation benefits with the Ohio Bureau of Workers' Compensation ("BWC"), claiming eligibility to benefits due to a back injury suffered while lifting boxes at his place of employment with Lakeview Farms ("Lakeview"). Subsequently, the BWC granted his claim as to a sprain in his lumbar region, but denied his claims for spondylolisthesis, sacrum disorder, and sacroilitis, and Clay appealed the decision to the Industrial Commission of Ohio ("Industrial Commission").

{¶3} In April 2008, the Industrial Commission vacated the BWC's order and granted benefits for a "fracture to the pars interarticular at L5 level resulting in

an anterolisthesis at L5-S1," with temporary total compensation awarded from January 11, 2007, through January 4, 2008, and April 18, 2008, through April 22, 2008. (April 2008 Record of Proceedings, pp. 1-2). Subsequently, Lakeview appealed the Industrial Commission's decision.

{¶4} In June 2008, the Industrial Commission modified its April 2008 award, granting temporary total disability compensation benefits from November 1, 2007, through the present, and continuing upon the submission of medical evidence. In its decision, the Industrial Commission stated the following:

> **This finding is based upon the medical records of Dr. Fumich, specifically those dated 6/3/2008, which indicates [sic] that the condition would not show on an MRI, but rather be shown on a CT-scan or x-ray; his report of 4/08/2008, 2/12/2008, 1/18/2008 and 11/1/2007. Dr. Fumich is aware of Injured Worker's specific work activity and opines that Injured Worker sustained an acute incident from his lifting activities.**
>
> **Therefore, the weight of the evidence supports that the condition arose in the course and scope of Injured Worker's employment and the claim is allowed as indicated.**

(June 2008 Record of Proceedings, p. 1).

{¶5} In September 2008, Lakeview appealed the Industrial Commission's June 2008 decision to the Court of Common Pleas of Cuyahoga County pursuant to R.C. 4123.512.

{¶6} In December 2008, pursuant to the agreement of the parties, the case was transferred to the Court of Common Pleas of Allen County.

{¶7} On September 10, 2009, Clay filed a motion for relief from Loc.R. 3.08, requesting that he be permitted to file the deposition of his medical expert, Dr. Frank Fumich, only three days prior to trial. In the motion, Clay explained that the normal procedure for workers' compensation cases is to delay spending money on the case before there is an attempt to resolve the matter; that a conference was held on August 12, 2009, but no resolution was reached; and, that he then attempted to schedule Dr. Fumich for a deposition, but Dr. Fumich notified him he would only be available on September 24, 2009. Subsequently, the trial court granted the motion.

{¶8} On September 24, 2009, Dr. Fumich testified via deposition that he is licensed to practice medicine in the state of Ohio; that he practices with the Orthopedic Institute of Ohio and is board certified as a specialist in orthopedic surgery; that he first treated Clay in November 2007; that Clay complained of lower back pain and bilateral leg pain; that Clay stated that he began experiencing the pain after an incident at work in October 2007 where he was lifting forty-pound boxes; that Clay related that the pain made it difficult for him to walk and stand; that Clay informed him that he received chiropractic treatment from October 16, 2007, up until October 23, 2007; and, that, based upon an x-ray of Clay's back, he diagnosed him with "a grade one spondylolisthesis and a pars

defect of the L5-S1 level." (Fumich Dep., p. 10). The following discussion then took place between Clay's trial counsel and Dr. Fumich:

**Clay's Trial Counsel:** * * * **I want you to assume as it was told, as you were told in your history, that he lifted a box that weighed approximately forty pounds and felt the pain in his low back, he continued to work about four hours or so that day continuing to lift boxes, and when he got home he had trouble getting out of his truck and he felt the back pain, which he then went to see the chiropractor for, eventually ending up in your care. I want you to assume your findings, diagnoses, testing that you've all discussed here today, and I want you to assume that on April 9, 2005, he had a motor vehicle accident in which he did see a chiropractor, and he did have some low back pain. I want you to assume that in February 7, 2007, or thereabout, he also had low back pain and he was treated by a chiropractor, even going back as far as back as [sic] the year 2000 he had chiropractic treatment for his low back. But I also want you to assume that when he reported to work that day he was able to perform his services, he was not on any restriction, and he was able to lift boxes until he lifted this particular box. I want you to also assume that he had had treatment as late as 2007, as I said in February 7, 2007, for his low back by a chiropractor. Now, Doctor, accepting those factors as true and accepting your findings and your diagnoses, I ask you if you have an opinion to a reasonable degree of medical probability and certainty as to whether that lifting incident on October 16, 2007, as was described by you, proximately caused the conditions that you diagnosed and discussed with us in your deposition here today. Do you have an opinion?**

**Dr. Fumich: Well, you've offered a lot of new information to me that I wasn't aware of beforehand.**

**Clay's Trial Counsel: Yes, sir.**

**Dr. Fumich: Different treatments for different incidences which I've had no ability to review records of until you've said this just now very succinctly in the matter of two minutes. So, that offers**

**a whole lot of more information I can consider, that I have to take a look at to be able to say with absolute certainty what my judgment is. I can't say without looking at that, now that I know that that existed, that this is direct causation of that lifting injury. If none of those radiologic studies showed that a pars fracture or spondylolisthesis existed, I would be led to believe that this lifting injury caused this new fracture and this new spondylolisthesis which would be this work injury. But without knowing what those records show, I would have to see those to confirm that this isolated injury was the cause of that problem. So to answer you, I really can't just summarize and say that I agree everything falls on a work injury on that date now that you've introduced this new information to me without me reviewing it.**

**Clay's Trial Counsel: All right. Let me add to that, that there is no radiological evidence that he had these two conditions prior to coming to see or prior to this October 16, 2007 incident. Adding that to the evidence that's been given to you here today, do you have an opinion then as to whether the conditions were caused by the lifting incident?**

**Dr. Fumich: I would still like to see those radiographic studies myself. * * * I can't give you a definitive answer on that. I didn't have any other studies that Derek brought with him except the ones that I took in the office, so I have not seen the chiropractic studies or anything prior to the year in [sic] 2007. * * ***

**\* \* \***

**Clay's trial counsel: Let's go off the record a moment, please. * * * Dr. Fumich, you've had an opportunity to review Plaintiff's exhibit 1, which is the office records of Dr. Holman Chiropractic.**

**Dr. Fumich: Yes.**

**Clay's Trial Counsel: Was there anything in those records that would assist you here today in arriving at a conclusion to a reasonable degree of medical probability?**

**\* \* \***

**Dr. Fumich: Prior to me learning of this, I knew of no other incident that affected his back. And I've been introduced to new information today that leads me to believe he had something else going on before I met him.**

**Clay's Trial Counsel: Would the x-ray pictures assist you in arriving at a conclusion in this case if we had Dr. Holman's x-rays taken?**

**Dr. Fumich: To review an x-ray to confirm whether or not there was this spondylolisthesis or pars fracture that would give me more information to know if there was a fracture sustained on the date of the stated injury.**

(Id. at pp. 13-17).

{¶9} On cross-examination, Dr. Fumich further stated that Clay's mother, who helped Clay complete the medical history questionnaire provided to new patients, failed to disclose that Clay had suffered two previous back injuries prior to the injury he sustained while lifting boxes at his place of employment, and that she failed to disclose his previous history of treatments for back injuries dating back to 2000.

{¶10} On September 25, 2009, Clay filed a motion for continuance of the trial date, requesting a thirty-day continuance to give Dr. Fumich an opportunity to review his prior treatment records so that Dr. Fumich may be able to form an

opinion as to whether his back injury was the proximate result of his lifting boxes while employed by Lakeview. In the motion, Clay stated that Dr. Fumich expressed a prior opinion in his reports that his "fracture to the pars interarticular at L5 level resulting in an anterolisthesis at L5-S1" was sustained as a result of lifting boxes at Lakeview in October 2007 (motion for continuance, p. 1); that, subsequent to the deposition of Mary Eix, Clay's mother, on September 24, 2009, it was discovered that Dr. Fumich had not been given a history of his prior chiropractic treatments in 2000, 2005, and February 2007; that, when Dr. Fumich was presented with a hypothetical question at the deposition that included information pertaining to his prior treatments, Dr. Fumich was not able to state an opinion as to the exact cause of the diagnosis based upon this new information relating to his prior back problems; and, that Dr. Fumich responded that he could give an opinion as to the causation of the back injury if he was able to review the prior radiological findings of the chiropractors to rule out pre-existing conditions.

{¶11} Subsequently, the trial court denied Clay's motion for a continuance, stating the following in its judgment entry:

> **Plaintiff wants a continuance due to what he calls "unexpected problems…with Dr. Fumich's testimony…" Dr. Fumich has been identified as plaintiff's sole expert witness. Defendant contends the "unexpected problems" are that Dr. Fumich was unable to render the necessary opinion for plaintiff's case because he did not have records of plaintiff's prior medical history. * * ***

* * *

**This is a case where, three business days before trial * * *, after counsel have [sic] waited practically until the last minute to learn what the expert would say, an "unexpected problem" arises with the plaintiff's expert testimony – a problem that is ostensibly damaging to plaintiff's case. Based on the motion * * *, it appears the "unexpected problem" is due to the fact that plaintiff's expert, Dr. Fumich, was never provided with an accurate and complete history of plaintiff's medical condition before he was asked to render trial testimony via his video deposition. * * * Is the problem one that could have been avoided with an accurate history or perhaps earlier or better preparation? Any damage to the plaintiff's case in this instance was self-inflicted by waiting until the last minute to arrange for the expert's deposition. * * ***

(Sept. 2009 Judgment Entry on Plaintiff's Motion for Continuance, pp. 2-4).

**{¶12}** On September 29, 2009, the trial court filed a notice of its intention to dismiss the case with prejudice pursuant to Civ.R. 41(B)(1) for Clay's failure to appear on the date of trial, and requested that both parties brief the issue of whether the case should be dismissed with prejudice for failure to prosecute.

**{¶13}** In October 2009, subsequent to briefing by Clay and Lakeview, the trial court dismissed the case with prejudice, stating the following in its judgment entry:

**This decision is necessitated by plaintiff, who, during a telephone conference call on September 29, 2009, represented to the court that plaintiff could not proceed with presentation of this case on September 29, 2009, the date previously scheduled for jury trial. The jury was canceled and plaintiff did not appear for trial on September 29, 2009.**

**Pursuant to R.C. 4123.512(D), plaintiff cannot unilaterally voluntarily dismiss his case without the consent of the defendant. Defendant did not consent to a voluntary dismissal. The plaintiff was given notice that his failure to proceed at trial would result in the case being dismissed pursuant to Civ.R. 41(B)(1). Plaintiff requested the Court dismiss the matter for failure to prosecute "without prejudice."**

**\* \* \***

**The Court finds that plaintiff has failed to prosecute this case by not going forward at trial with evidence in support of his case. In his response \* \* \*, plaintiff explains that the reason he did not go forward with the prosecution of his case was because he was surprised by the deposition testimony of Dr. Fumich, plaintiff's expert.**

**\* \* \***

**In spite of the heightened scrutiny to which dismissals with prejudice are subjected, a dismissal pursuant to Civ.R. 41(B)(1) is appropriate in cases where the conduct of a party is so negligent or irresponsible, as to merit such a harsh sanction. It is within the sound discretion of the trial court to dismiss an action for lack of prosecution. \* \* \* In the careful exercise of this discretion, this Court considers the following:**

**1.    The fact that plaintiff did not appear for or proceed with trial;**
**2.    the reasons plaintiff did not proceed with presenting his case, including all evidence disclosed by Dr. Fumich's deposition (Dr. Fumich testified, "...I've been introduced to new information today that leads me to believe he had something else going on before I met him." (Fumich Dep. p. 17));**
**3.    the fact that *plaintiff* (or his mother) denied a prior history to Dr. Fumich; \* \* \***
**4.    the timing of the alleged "surprise," (Fumich's deposition was not arranged until a few days before trial) and the fact that the element of surprise could have been avoided had plaintiff not been so dilatory in: a) arranging the deposition, and b) making**

> **sure Dr. Fumich had all the prior medical evidence before he rendered an opinion[.]**
>
> **\* \* \***
>
> **The Court finds that plaintiff's failure to prosecute this case was the result of things that plaintiff could have prevented, and so, dismissal for lack of prosecution is warranted. \* \* \* Dismissal with prejudice is also warranted and consistent with the dilatory conduct of plaintiff and the reasons SB 7 ended employee-claimants', like plaintiff's, unilateral ability to voluntarily dismiss a complaint.**

(Emphasis in original). (Oct. 2009 Judgment Entry of Dismissal, pp. 1-5).

{¶14} It is from the trial court's dismissal of his case with prejudice that Clay appeals, presenting the following assignment of error for our review.

> **THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED PLAINTIFF-APPELLANT'S MOTION FOR CONTINUANCE OF THE TRIAL DATE BASED UPON STRANGE AND UNUSUAL CIRCUMSTANCES THAT PREVENTED APPELLANT FOR [SIC] HAVING SUFFICIENT TIME TO INVESTIGATE AND WHEN THE COURT SUBSEQUENTLY GRANTED SUMMARY JUDGMENT TO DEFENDANT-APPELLEE THE APPELLANT WAS PREJUDICED TO THE EXTENT THAT HIS PREVIOUSLY ALLOWED WORKERS' COMPENSATION CLAIM WAS REVERSED.**

{¶15} In his sole assignment of error, Clay argues that the trial court abused its discretion in denying his motion for a continuance and dismissing his claim with prejudice. Specifically, Clay contends that a continuance of the trial date should have been granted to give him additional time to provide Dr. Fumich with all prior medical records so that he could make a determination as to the

cause of his back injury, where Dr. Fumich had previously linked his diagnosis to the injury he sustained while employed at Lakeview, where there was no prior indication Dr. Fumich would testify that he needed to review further records to determine the exact cause of the back injury, and where a denial of the continuance resulted in an extreme detriment by effectively causing a dismissal of the case with prejudice. We disagree.

{¶16} The trial court's grant or denial of a motion for continuance is within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. *In re Arms*, 3d Dist. No. 14-07-24, 2007-Ohio-6717, ¶13, citing *State v. Unger* (1981), 67 Ohio St.2d 65, 67. See, also, *Beard v. Rodriguez*, 3d Dist. No. 13-04-26, 2005-Ohio-1916, ¶5. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.

{¶17} The Supreme Court of Ohio has formulated a balancing test of all competing interests to determine whether a trial court has abused its discretion in its decision on a motion for continuance:

> **In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the**

**court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.**

*Unger*, 67 Ohio St.2d at 67-68. See, also, *In re T.C.*, 140 Ohio App.3d 409, 417, 2000-Ohio-1769.

{¶18} Additionally, Civ.R. 41(B) provides for the involuntary dismissal of actions, and states as follows:

**(B) Involuntary dismissal: effect thereof**

**(1) Failure to prosecute. Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim.**

**\* \* \***

**(3) Adjudication on the merits; exception. A dismissal under division (B) of this rule and any dismissal not provided for in this rule, except as provided in division (B)(4) of this rule, operates as an adjudication upon the merits unless the court, in its order for dismissal, otherwise specifies.**

{¶19} An involuntary dismissal pursuant to Civ.R. 41(B)(1) is within the sound discretion of the trial court. *Dray v. General Motors Corp.*, 3d Dist. No. 1-05-35, 2006-Ohio-347, ¶23, citing *Pembaur v. Leis* (1982), 1 Ohio St.3d 89, 91. Furthermore, an involuntary dismissal with prejudice as a sanction for failure to prosecute or for failure to follow court orders is a harsh sanction and contrary to the fundamental preference for deciding a case on its merits. *Jones v. Hartranft*,

78 Ohio St.3d 368, 371, 1997-Ohio-203, citing *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 632. Consequently, a trial court should not dismiss a case with prejudice unless the plaintiff's conduct is "negligent, irresponsible, contumacious or dilatory as to provide substantial grounds for a dismissal with prejudice * * *[.]" *Schreiner v. Karson* (1977), 52 Ohio App.3d 219, 223. Before a trial court may dismiss an action with prejudice, it must provide notice to the plaintiff of its intention to dismiss. Civ.R. 41(B)(1). See, also, *Dray*, 2006-Ohio-347, at ¶21. "Notice is an absolute prerequisite for dismissal * * *." *FIA Card Servs., N.A. v. Salmon,* 180 Ohio App.3d 548, 2009-Ohio-80, ¶12, citing *Perotti v. Ferguson* (1983), 7 Ohio St.3d 1, 2-3.

{¶20} Moreover, where the employer in a workers' compensation case files a notice of appeal from a decision of the Industrial Commission, the claimant may not dismiss the appeal without the employer's consent. R.C. 4123.512(D); *Thorton v. Montville Plastics and Rubber, Inc.,* 11th Dist. No. 2006-G-2744, 2007-Ohio-3475, ¶¶14-15.

{¶21} In the case sub judice, Clay scheduled a deposition with Dr. Fumich only days before the start of trial; while the delayed deposition may have been partly due to Dr. Fumich's busy schedule, the deposition was taken a full year after Lakeview filed its notice of appeal, and Clay should have anticipated the need for Dr. Fumich's testimony and attempted to schedule the deposition much

sooner. Additionally, Clay did not provide Dr. Fumich with all of the information relating to his previous back problems prior to the deposition, but introduced him to this information at the time of the deposition. Although Clay's trial counsel may not have been aware that Clay failed to disclose his full back history to Dr. Fumich, Clay knew of this concealment, and he and his trial counsel should have been vigilant to make sure Dr. Fumich had all needed information and records prior to the deposition in order to form an expert opinion on the relation of Clay's back injury to his work at Lakeview.

{¶22} Even though the length of the continuance requested, thirty days, was reasonable, no other continuances had been requested, and the inconvenience to the parties would have likely been minimal, the circumstances giving rise to the request were clearly the result of Clay's reprehensible actions in concealing his prior back problems from Dr. Fumich and Clay's trial counsel's neglect in assuring a timely deposition and that Dr. Fumich had all necessary information and records prior to the deposition. Accordingly, although this Court might have reached a different conclusion regarding the continuance if the standard of review was de novo, the denial of the motion for continuance was within the trial court's discretion, and we do not find an abuse of that discretion, as the trial court gave thorough consideration to all necessary factors before exercising judgment.

{¶23} Turning now to Clay's argument that the trial court erred in dismissing his case with prejudice, we first note that Clay purposely failed to appear for the scheduled trial date despite the trial court's denial of his motion for a continuance. Although Clay may not have possessed the necessary expert testimony to connect his back injury to actions he performed within the course of his employment with Lakeview, he could have presented other evidence establishing a link between the injury and his employment, including the evidence he presented to the BWC and Industrial Commission to secure workers' compensation benefits. Furthermore, even if Clay would have proceeded to trial and lost, he could have appealed the trial court's denial of his motion for a continuance. Additionally, the trial court properly informed Clay of its intention to dismiss his case with prejudice, and the trial court was also correct in denying his request to dismiss the case without prejudice because Lakeview did not consent to the dismissal.

{¶24} Consequently, due to Clay's actions necessitating the need for the continuance, and Clay's purposeful absence at trial, we find his actions to be "negligent, irresponsible, [and] contumacious" *Schreiner*, 52 Ohio App.3d at 223, such that the trial court did not abuse its discretion in dismissing the case with prejudice.

{¶25} Accordingly, we overrule Clay's assignment of error.

{¶26} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur in Judgment Only.**

**/jlr**