**State v. Christon
and
State v. Goraleski**
*[Cite as 5 AOA 47]*

*Case No. 11996, 11997*
*Montgomery County, (2nd)*
*Decided July 3, 1990*

*Jim Christon, 15 East Fourth Street, Suite 625, Dayton, OH 45402, Defendant-Appellant, Pro Se.*

*Joe Cloud, 424 Patterson Road, Dayton, OH 45419, Attorney for Plaintiff-Appellee.*

*Carl G. Goraleski, 222 Linwood Street, One West, Dayton, OH 45405-4943, Attorney for Defendant-Appellant, Pro Se.*

FAIN, J.

Defendants-Appellants Jim Christon and Carl Goraleski, both of whom are attorneys, were found in contempt of court and fined $500 each for refusing to proceed to trial in a case in which they were co-counsel. Christon and Goraleski appeal *pro se* from the findings of contempt. Because the circumstances applying to both appellants are identical, these appeals have been consolidated. Christon and Goraleski jointly assert three assignments of error, claiming that the findings of contempt were an abuse of discretion, denied their clients due process, and constituted an improper civil contempt. For the reasons set forth herein, we reject these assignments of error, and will affirm the judgment of the trial court.

I.

Christon and Goraleski were jointly representing several defendants accused of first degree misdemeanors. The case, which involved off-duty police officers, attracted local media attention. Due to the publicity and the expected length of trial, the trial court rescheduled several other matters, including two jury trials, to accommodate this case with the trial date requested by Goraleski, who was acting as lead counsel.

Eleven days before the trial began, Goraleski orally moved for a continuance on the grounds that the State had not fulfilled its discovery obligations. Christon and Goraleski maintained that the State possessed a tape recording of radio transmissions made by the officer who arrested their clients, and that this tape was relevant to the defense. The trial court found that the State had provided adequate discovery and denied a continuance.

Three days later, Goraleski again orally moved for a continuance on the same grounds. When the trial court informed Goraleski that his motion was again denied, Goraleski informed the court that he might also request a continuance based on the illness of Christon, whom he said had an ear infection. On the next day, Goraleski filed a written motion for a continuance based upon both of the grounds stated above. This motion was also overruled.

On the date of the trial, Goraleski and Christon, who was in court despite his ear infection, yet again moved for a continuance, once more asserting as grounds the State's alleged discovery violations regarding the tape and Christon's ear infection. After the motion was overruled, the appellants informed the trial court that they would not proceed to trial. The trial court responded that if they did not go forward, they would be held in contempt of court. Goraleski and Christon both refused to proceed and were fined $500 each for their contempt.

From their contempt citations, Goraleski and Christon appeal

II

Goraleski and Christon assert as their First Assignment of Error that:

"THE FAILURE BY THE COURT TO GRANT APPELLANT'S TIMELY MOTION FOR CONTINUANCE AND ITS SUBSEQUENT ORDER TO PROCEED OR BE FOUND IN CONTEMPT WAS AN ABUSE OF DISCRETION."

We do not agree.

Courts have an inherent power to punish contempts that exists independently from express constitutional provisions or legislative enactments, and must be accorded substantial deference in the exercise of this power. *Cincinnati v. Cincinnati Dist. Council 51* (1973), 35 Ohio St. 2d 197. The trial court expressly found appellants in contempt by virtue of R.C. 2705.02(A) which states that one is in contempt for "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court ***." Therefore, appellants were in contempt as a matter of law if the command to proceed with the trial was a lawful order.

Ordinarily, even an order constituting reversible error must be obeyed so long as the order is made within the lawful scope of a court's authority. *Fawick Airflex Co. v. United Electrical Workers* (1951), 90 Ohio App. 24, third paragraph of syllabus.

Where, as here, however, an attorney for a criminal defendant is subject to the potentially inconsistent professional obligations of: (i) obeying lawful orders of the court; and (ii) protecting his client's constitutional rights, we have held it to be a defense to a contempt citation that the order to proceed was, under all of the prevailing circumstances, an abuse of discretion. *In re: Sherlock* (1987), 37 Ohio App. 3d 204.

In the case before us, we conclude that the trial court's order to proceed was not an abuse of discretion.

The decision to grant or deny a motion for continuance lies within the sound discretion of the trial court and cannot be reversed absent a showing that the decision was arbitrary, unreasonable, or unconscionable. *Unger Sarafite* (1964), 376 U.S. 575, 589; *State v. Unger* (1981), 67 Ohio St. 2d 65, 67. Even though "[t]here are no mechanical tests for deciding when a denial of a continuance is so

arbitrary as to violate due process," *Sarafite, supra*, at 589, the Supreme Court has recognized several factors that are relevant:

"In evaluating a motion for continuance, a court should note, *inter alia*: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case."
*Unger. supra* at 67-68, citing *United States v. Burton* (C.A. D.C., 1978), 584 F. 2d 485, certiorari denied 423 U.S. 1072, and *Giacalone v. Lucas* (C.A. 6, 1971), 445 F. 2d 1238, certiorari denied, 405 U.S. 922.

The trial court found that a continuance would present great inconvenience to itself, witnesses, and potential jurors. The trial court had substantially rearranged its docket to accommodate this case with the trial date that had been requested by Goraleski only one month earlier. Due to the extensive publicity, twice the normal number of potential jurors had been summoned to court. A substantial number of witnesses were also in attendance, having taken the day off from their jobs. While Christon had an ear infection, Goraleski, the lead counsel, had no medical problems to hinder his presentation of the case.[1] Finally, the trial court specifically found that the justifications for a continuance were the result of appellants' dilatory handling of this matter:

"After listening to the statements of Counsels, it is this Court's opinion that neither Defense Counsel have made any attempt to properly prepare this case, have made no attempt to investigate the evidentiary issue which they raised, and have made no attempt to contact the potential witnesses in this case. It is the further opinion of this Court that the continuance requested by Counsels for Defendants' [*sic*] are frivolous, have no reasonable foundation, and were not being made due to any health problems of Mr. Christon." Entry, Nov. 29, 1989, pp. 4-5.

The trial court expressly based its denial of a continuance on factors enumerated in *Unger. supra*, and we cannot say that it abused its discretion. It is irrelevant that appellants can point to the fact that they had not received a previous continuance, and only asked for a two-week postponement. Although these factors cut in Christon's and Goraleski's favor, it remained in the trial court's discretion to decide which factors were to be given the most weight. There is nothing in the record to indicate that the trial court arbitrarily or unreasonably weighed these factors.

Appellants claim that if they had proceeded to trial, they would have violated D.R. 6-101(A)(2), which provides that il[a] lawyer shall not handle a legal matter without preparation adequate in the circumstances." Christon and Goraleski rely on this court's opinion in *In re: Sherlock, supra* , for the proposition that a trial court *Sherlock* commit error if denial of a continuance forces the attorney to violate the code of professional responsibility. However, in *Sherlock* we also noted that:

"While we have elected to base this decision on the clear and obvious violation by the trial' court under the facts of the case of appellants' duties under the Code of Professional Responsibility, a caveat is in order: this Court should not be understood as holding that an attorney may necessarily avoid the consequence of a refusal to obey a direct order of a trial court simply because his understanding of his personal or professional duties may differ from that of the court." *Id.* at 212, quoting *State v. Gasen* (1976), 48 Ohio App. 2d 191, 195.

In *Sherlock,* the defense attorney had a much stronger argument for a continuance. The trial judge had given her the impression that the case was not going to proceed to trial on the scheduled date, and it was only on the scheduled trial date that she became aware that the trial judge intended for her to proceed.

In the case before us, the trial court found that appellants were not adequately prepared due solely to their own inaction. Nothing in the record convinces us that the trial court abused its discretion in reaching this conclusion. DR 6-101(A)(3) states that "[a] lawyer shall not neglect a legal matter entrusted to him." We are not inclined to allow attorneys to place themselves in positions that are questionable under the Code of Professional Responsibility and then claim that this very position immunizes them from contempt sanctions.

Christon's and Goraleski's First Assignment of Error is overruled.

### III

As their Second Assignment of Error, appellants assert that:

"THE ORDER OF CONTEMPT ISSUED BY THE COURT BELOW WAS A FINDING OF CIVIL CONTEMPT AND THE COURT'S IMPOSITION OF A FINE WAS THUS IMPROPER DUE TO IMPOSSIBILITY OF PERFORMANCE."

We do not agree that the contempt in question was civil.

A criminal contempt is unavoidable punishment for *past* affronts to the court, while civil contempts are designed to bring about *future* compliance with court orders and allow complete avoidance of the sanction if the contemnor does certain acts to purge himself of contempt. *Brown v. Executive 220, Inc.* (1980), 64 Ohio St. 2d 250. Christon and Goraleski were punished for a past affront to the court, i.e. refusing to proceed to trial. After the contemptuous conduct occurred, there was no way to purge the contempt. It is irrelevant that *before* finding them in contempt, the trial court warned that if appellants did not proceed to trial, they would be punished. This did not put the proverbial "keys to the jailhouse" in appellants' pockets because at that moment, they were not yet in contempt. After they were found in contempt, no action of any kind could have purged Goraleski or Christon of their fines. Therefore, the contempts were clearly criminal in nature.

Appellants' argument that it was impossible for them to proceed to trial due to DR 6-101(A) (2) was discussed in our treatment of the First Assignment of Error.

IV

Christon's and Goraleski's final Assignment of Error asserts as follows:

"THE TRIAL COURT'S INSISTENCE ON DISCLOSURE BY THE APPELLANT OF THE RELEVANCY OF NEWLY DISCOVERED EVIDENCE PRIOR TO TRIAL WAS AN ABUSE OF THE COURTS DISCRETION AND CONSTITUTED INTERFERENCE WITH THE DEFENDANTS RIGHT TO A FAIR TRIAL."

The "new evidence" referred to is the allegedly altered tape recording the State possessed. Appellants present absolutely no indication of how their clients' constitutional rights were infringed upon. When Christon and Goraleski refused to proceed with the trial, no trial was held. We fail to see how appellants' clients could have been denied due process of law when no trial took place. Moreover, we cannot fathom how appellants are in a position to claim their clients' constitutional rights as a defense to their own contempt. If the trial court erred on a discovery question, this could be raised on an appeal of their *clients' case.* The situation did not demand, as appellants' tortured reading of the Code of Professional Responsibility insists it did, that Christon and Goraleski refuse to go to trial until the trial court issued a discovery ruling that was more to their liking.

Finally, we do not agree that a trial court errs by inquiring concerning the relevance of unresolved pending discovery matters when it is exercising its discretion whether to continue a trial date. The trial court must balance the harm that would be visited upon the party seeking the continuance if the continuance were denied versus the inconvenience that would result from the granting of the continuance. It is reasonable for the trial court to inquire concerning the nature and extent of the harm that would result from the denial of the requested continuance, and this inquiry will naturally lead the court to inquire concerning the relevance of any unresolved pending discovery matters. We do not see any fair trial or due process problems inherent in forcing a criminal defendant, in such a situation, to disclose his theory of the case to the extent necessary to show the relevance of the unresolved pending discovery matters.

Christon's and Goraleski's Third Assignment of Error is overruled.

V

Each of Christon's and Goraleski's Assignments of Error having been overruled, the judgment of the trial court will be affirmed.

WOLFF, P.J., and BROGAN, J. concur.

---

[1] One of the "other relevant factors" supporting denial of a continuance is "[w]hether lead counsel had associates prepared to try the case in his absence." *Giacalone. supra,* at 1240. Presumably, there is even less reason to grant a continuance if the lead counsel is able to appear at trial.