OPINION
This appeal is brought by the juvenile Byron Hart from the judgment of the Common Pleas Court of Montgomery County, Juvenile Division, adjudicating him delinquent by reason of aggravated robbery pursuant to R.C. 2151.02 and R.C. 2911.01.
The record presents the following facts. At approximately 9 p.m. on January 6, 2000 Mary Stephens (Stephens) and James Turner (Turner) were leaving their place of employment, the Dayton Daily News at the Westown Shopping Center, when they were robbed at gunpoint by three masked assailants. Stephens testified that she was at her car unlocking the driver's side door when three assailants approached her and ordered her to hand over her money. Stephens testified that she resisted by shouting for help and by kicking one of the assailants, causing the scarf-like mask to fall away from his face. Stephens testified that she immediately recognized the unmasked perpetrator as Byron Hart, the son of one of her co-workers. Stephens said that after the mask fell away, Byron reached past her, grabbed her purse from inside the car, and ran off with the other two assailants following behind. Stephens' purse was never recovered. James Turner remained on the other side of the car during the entire incident and could not identify any of the attackers.
As soon as the assailants were gone, Stephens went back inside the branch of the Daily News and used the phone to call her daughter, her work supervisor, Byron Hart's mother, and the police. The responding police officer testified that upon arriving on the scene, Stephens informed him that Byron Hart had robbed her and further indicated to him that she had spoken to Byron's mother prior to calling the police. The police officer testified that Stephens explained that according to Byron's mother, Byron was out delivering pizzas with his father. Another police officer was dispatched to look for Byron at the Pizza Hut but did not testify at the hearing as to his findings.
Debra Stephens, the victim's daughter, testified at the hearing that she had seen and spoken to Byron Hart earlier that evening at about 7 p.m. at the Westown Shopping Center, not far from the scene of the robbery.
At the completion of the prosecution's case in chief, Byron's defense counsel informed the court that three defense witnesses were not present in court, although subpoenaed, and she had no explanation for their absence. Defense counsel explained to the court that these were alibi witnesses but did not proffer the expected testimony. Defense counsel then asked the court for "some additional time to bring those witnesses here."
The court treated defense counsel's request as a motion for continuance and denied the request on the basis that one continuance had already been issued for the purpose of procuring these very same witnesses. The Defense proceeded without objection or further requests. Byron's sole witness was his father who told the court that Byron had been with him from 5 p.m. to 11 p.m. on the night of January 6, helping him deliver pizzas for Pizza Hut.
Subsequently, the court found that the State had proven each element of aggravated robbery. The court's decision placed great weight on the Stephens' eyewitness testimony and further felt that Byron's father fabricated his testimony. Byron Hart was adjudicated delinquent and committed to the Department of Youth Services for a minimum term of two years. It is from this order of adjudication that Byron now appeals., Appellant raises the following assignments of error:
 The trial court erred in overruling Appellant's request for continuance because there was no evidence that such continuance would inconvenience the litigants, the witnesses, or opposing counsel, and because the continuance was necessary to secure the testimony of subpoenaed witnesses which would have bolstered the testimony of Appellant's sole alibi witness.
The trial court erred in convicting Appellant because Appellant was denied effective assistance of counsel when counsel failed to object to hearsay testimony which bolstered Appellee's eyewitness identification testimony.
 First Assignment of Error In his first assignment of error, Byron asserts that the trial court erred when it failed to grant his continuance since there was no evidence that anyone would be inconvenienced by a continuance. Appellant further asserts that the continuance was necessary to present the testimony of subpoenaed witnesses who would have bolstered his father's alibi testimony. Since, however, inconvenience and necessity alone are not outcome determinative in motions for continuance, we do not find the appellant's argument well taken.
Juvenile Rule 23 sets forth the standard for granting continuances during juvenile proceedings providing that: "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." The decision to grant or deny a motion for continuance lies within the sound discretion of the trial court and cannot be reversed absent a showing that the decision was arbitrary, unreasonable, or unconscionable. State v. Christon (1990), 68 Ohio App.3d 471 (citingState v. Unger (1981), 67 Ohio St.2d 65, 67). To reverse on the basis that the court has abused its discretion, a reviewing court must be convinced that the lower court engaged in a course of conduct or assumed an attitude that was either arbitrary, capricious or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
In deciding a motion for continuance the trial court may consider the following factors: (1) the length of delay requested; (2) the number of continuances already requested; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the defendant contributed to the circumstance giving rise to the request for a continuance; and other relevant factors depending on the facts of the case. State v. Landrum (1990), 53 Ohio St.3d 107, 115., Appellant asks us to find an abuse of discretion by the trial court based on his unsupported contention that the trial court was bound to grant a continuance absent a showing of inconvenience. As demonstrated by the case law cited above, the trial court was free to consider any of the four specific factors along with any other factors it considered to be relevant.
In the case sub judice, the trial court made its decision based on the fact that one continuance had already been granted to permit the defense to subpoena the same witnesses. Since the issuance of subpoenas failed to produce the witnesses, the court had no reason to believe another continuance would produce them.
Significant to our analysis is the failure of the defense counsel to proffer the testimony of the missing witnesses. In State v. Nixon (Dec. 7, 1994), Montgomery County App. No. 14366, unreported this court found that a trial court did not abuse its discretion in overruling a motion for a continuance where defense counsel failed to provide the trial court with any evidence in support of the motion as requested at the hearing. In Foster v. Terheiden (May 9, 1990), Hamilton Cty. App. No. C-890192,unreported the First District Court of Appeals found no abuse of discretion where the trial court denied a continuance to secure witnesses that the plaintiff claimed were critical to his case based on plaintiff's failure to proffer the expected testimony. Similarly, in the case at bar, defense counsel did not proffer the testimony of the missing witnesses.
The court below had no way of knowing whether the missing witnesses would materially affect Byron's defense nor could the court have anticipated that the witnesses would bolster Mr. Hart's testimony since Mr. Hart had not yet testified. In State v Grissom (Oct. 27, 1995), Lucas County, App No. L-94-220, unreported the Sixth District Court of Appeals considered a similar case where the trial court denied a continuance in order to compel the presence of an alibi witness. That court determined that defense counsel's proffer showed that the anticipated alibi testimony would not have placed appellant in a specific place at any specific time. As a result, the reviewing court determined that the trial judge's decision was neither arbitrary, unreasonable or unconscionable., Appellant supports his argument that the trial court abused its discretion with four cases that are distinguishable on their facts. In State v. Holmes (1987), 36 Ohio App.3d 44 the court found abuse of discretion where the trial court refused to allow a witness, currently present, to testify, based on the witness' failure to appear on time the day before. Unlike the case at bar, the witness in Holmes was present and ready to testify.
In Rockenfield v. Kessler (January 11, 1989), Hamiliton Cty. App. No. C-880241, unreported the First District Court of Appeals found abuse of discretion where the trial court denied a continuance for the purpose of subpoenaing a witness. In that case the defense counsel had just learned that the witness' signed affidavit would not be allowed to come in as evidence and both parties agreed that said witness' testimony would go to the very essence of the issue in dispute. Whereas, in the case at bar, the trial court did not know what the missing witnesses would testify to nor did the trial court have any reason to believe that a second continuance would result in the appearances of the witness.
In Foster v. Terheiden (May 9, 1990), Hamilton Cty. App. No. C-890192,unreported, another First District case, the appellate court found abuse of discretion where the trial court refused to allow a continuance at 12 p.m. in order to hear the testimony of a police officer who wasn't under subpoena until 1 p.m. In Foster, unlike the case now before the court, the trial court had every reason to believe that the police officer would appear at 1 p.m., making the refusal to wait for 45 minutes unreasonable and thus an abuse of discretion.
Finally, in In re Umoh (October 23, 1998), Montgomery Cty. App. No. 16912, unreported this court found the denial of a continuance to be an abuse of discretion only after finding that the entire proceeding below was replete with procedural irregularities including the denial of the appellant's abilities to present a witness in a hearing held on unreasonably short notice. The case now before us presents no such procedural irregularities. Rather, the court below granted a previous continuance to subpoena the witnesses. That the court denied a second request for a continuance of unspecified duration to procure the same witnesses without a proper proffer of testimony is not a procedural irregularity.
For the reasons stated, the trial court's decision to deny defense counsel's request for a continuance was neither arbitrary, capricious nor unconscionable and therefore not an abuse of discretion. Appellant's first assignment of error is overruled.
 Second Assignment of Error
In his second assignment of error Byron asserts that he was denied effective assistance of counsel since his counsel below failed to object to hearsay testimony which effectively bolstered Stephens' identification testimony. Specifically, Byron alleges that his defense counsel should have objected when the trial court allowed the police officer who questioned Stephens on the scene to testify that Stephens told him that Bryon Hart was one of her assailants. However, since in the circumstance presented, the statement was not hearsay, defense counsel had no cause to object.
Evid.R. 801(D)(1)(c) provides that a statement is not hearsay if, in the case of a prior statement by witnesses, the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is one of identification of a person soon after perceiving him, if the circumstances demonstrate the reliability of the prior identification.
The statement made by the police officer meets the three statutory requirements discussed above. Ms. Stephens was present at trial and was subjected to cross examination. Her statement to the police officer was one of identification made within an hour of perceiving her attacker. Finally, the circumstances surrounding the identification demonstrate the reliability of the prior identification. The identification was made close in time to the attack and it was made to a police officer for the purpose of apprehending her attacker. Finally, the record is void of evidence that Stephens' identification was made under the influence of suggestion or bias.
Furthermore, the police officer's testimony was admissible to bolster Stephens' in court identification. In State v. Lancaster (1971),25 Ohio St.2d 83 the Ohio Supreme Court settled this issue stating:
 "Prior identification may be shown by the testimony of the identifier or identifying witness, or by the testimony of the third person to whom or in whose presence the identification was made, where the identifier has testified or is present and available for cross-examination at the trial, not as original, independent, or substantive proof of the identity of the defendant as the guilty party, but in corroboration of the testimony of the identifying witness, at the trial as to the identity of the defendant." Id. at 91. (citations omitted)
Having found that the police officer's testimony presented no hearsay problems, there can be no finding of ineffective assistance of counsel under the guidelines of Strickland v. Washington (1984), 466 U.S. 668
since defense counsel was under no duty to object to the statement. Therefore, Appellant's second assignment of error is overruled.
For the reasons stated above it is the order of this Court that the judgment of the Court of Court of Common Pleas, Montgomery County, Juvenile Division is hereby AFFIRMED.
WOLFF, P.J. and GRADY, J., concur.
(Hon. Thomas F. Bryant sitting by assignment of the Chief Justice of the Supreme Court of Ohio).