OPINION *Page 2 
{¶ 1} Defendant-appellant Ashley M. Baker appeals her conviction and sentence entered by the Licking County Court of Common Pleas, on one count of aggravated murder, one count of murder, one count of aggravated robbery, and one count of aggravated burglary, each with an attendant firearm specification following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On May 8, 2007, Appellant was charged with being delinquent by reason of having committed one count of aggravated burglary, a felony of the first degree if committed by an adult. On May 30, 2007, a second complaint was filed in the Licking County Court of Common Pleas, Juvenile Division. The second complaint alleged Appellant was delinquent for having committed aggravated murder, a felony of the first degree if committed by an adult; murder, a felony of the first degree if committed by an adult; and aggravated robbery, a felony of the first degree if committed by an adult.
 {¶ 3} The State filed a motion requesting the juvenile court relinquish jurisdiction for purpose of criminal prosecution and transfer of the matter to the General Division of the Licking County Court of Common Pleas. Following a preliminary hearing pursuant to Juv. R. 30(A) and (B) on June 7, 2007, the juvenile court found the offenses of aggravated murder and murder were subject to mandatory bind over and transferred those charges to the Licking County Court of Common Pleas, General Division, for adult prosecution. The juvenile court found the aggravated robbery and aggravated burglary charges were subject to discretionary bind over, and scheduled an amenability hearing *Page 3 
relative to those charges. Following the amenability hearing on August 10, 2007, the juvenile court ordered the aggravated burglary and aggravated robbery charges transferred to the General Division.
 {¶ 4} On June 15, 2007, the Licking County Grand Jury indicted Appellant on one count of aggravated murder, in violation of R.C. 2903.01(B); one count of murder, in violation of R.C. 2903.02(B), in Case No. 07CR318. Both counts carried firearm specifications. The trial court appointed Attorney J. Tullis Rogers as counsel for Appellant. Appellant appeared for arraignment on June 25, 2007, and entered a plea of not guilty to the Indictment. Appellant filed a written waiver of her speedy trial rights. On August 13, 2007, Attorney Rogers filed a motion for continuance of the trial, which had been scheduled for August 21, 2007. The trial court rescheduled the matter for November 27, 2007.
 {¶ 5} On August 17, 2007, the Licking County Grand Jury indicted Appellant on one count of aggravated robbery, in violation of R.C. 2911.01(A)(1) and/or (A)(3), a felony of the first degree; and one count of aggravated burglary, in violation of R.C. 2911.11(A)(1) and/or (A)(2), a felony of the first degree, in Case No. 07CR473. Both counts carried firearm specifications. The trial court appointed Attorney Rogers to represent Appellant in this case. Via Entry filed August 24, 2007, the trial court consolidated the two cases for purpose of trial and all future proceedings. Appellant appeared for arraignment in Case No. 07CR473 on August 27, 2007, and entered a plea of not guilty to the Indictment. Attorney Rogers filed a second motion for continuance on November 1, 2007. *Page 4 
 {¶ 6} The trial court granted the second motion for continuance, and scheduled a change of plea and sentencing hearing for December 17, 2007. Attorney Rogers filed a Motion to Withdraw as Counsel on December 12, 2007, citing Appellant's desire for a new attorney and her refusal to meet with him. The trial court granted Attorney Roger's request and scheduled the matter for jury trial on February 26, 2008. Via Judgment Entry filed December 28, 2007, the trial court appointed Attorney Eric Brehm to represent Appellant. Attorney Brehm was provided with notice of the February 26, 2008 trial date. On or about February 19, 2008, Appellant filed a motion for a continuance. The trial court denied the request.
 {¶ 7} The matter proceeded to trial on February 26, 2008. Carrie Iler testified, in May, 2007, she and her husband rented a two story home located at 443 Mount Vernon Road in Newark, Ohio. Iler and her husband lived in the dwelling with their two children and Ray Dickerson, Iler's husband's cousin. Iler recalled, on May 7, 2007, she was at home babysitting her girlfriend's four-month-old daughter while her husband and Dickerson were upstairs in their respective bedrooms. At approximately 2:30pm, Iler heard a knock at the front door. She opened the door and found Appellant and Megan Arensberg on the front porch. Appellant asked Iler if Dickerson was at home. Iler responded he was, but she thought he was sleeping. Iler shut the front door and proceeded to Dickerson's room. Iler knocked on Dickerson's bedroom door, entered the room, and informed Dickerson two girls were at the front door and wanted to talk to him. Dickerson instructed Iler to tell the girls he was asleep, and to get their names and he *Page 5 
would be in touch with them later. Iler shut the bedroom door and walked toward the staircase.
 {¶ 8} When Iler reached the top of the stairs she found Appellant and Arensberg proceeding up the stairs, each wearing black jersey gloves and carrying handguns. Iler stretched her hands out between the wall and the banister, and instructed the girls to get out of the house. Appellant attempted to spray a bleach solution in Iler's face. Iler repeatedly told the girls to get out of her house. Appellant then held a gun to Iler's head and informed Iler if she did not let them through, she (Iler) and the baby would die. Iler turned around and ran toward Dickerson's room, yelling, "Ray, they have guns." Iler opened the bedroom door and Appellant pushed past her, into the room. Dickerson jumped off his bed and began wrestling with Appellant. Dickerson was able to wrestle the gun away from Appellant. Upon losing control of her gun, Appellant broke away from Dickerson, ran out of the room, and shouted, "Get him off of me." Thereafter, Arensberg fired a single shot from her handgun, fatally shooting Dickerson in the forehead. Arensberg followed Appellant into the hallway, down the stairs, and out of the house. Iler ran to wake up her husband and then called 9-1-1.
 {¶ 9} Appellant testified on her own behalf. In May, 2007, she spent her social time with Arensberg and Lavelle Prince. Appellant had known Arensberg approximately one year. The two girls would play basketball, hang out at Arensberg's house, and smoke marijuana. Approximately one month before the shooting, Appellant met Dickerson and the two became friends. Appellant and Arensberg would visit Dickerson at his home, and the three would hang out and smoke marijuana. Appellant recalled on the Thursday before May 7, 2007, she, Arensberg, and Dickerson were in his bedroom, *Page 6 
smoking a "blunt", which she described as "weed like rolled up in like a shell", when Iler entered the room. According to Appellant, Iler said "hello" to the girls and observed them smoking the blunt. After the girls left Dickerson's house, Arensberg commented to Appellant they were going to get the money Dickerson had recently made from selling drugs. Appellant explained she and Arensberg originally did not intend to commit the robbery, but Lavelle Prince, Arensberg's boyfriend, would do so. Appellant stated during the weekend, she and Arensberg hung out, doing their normal thing. On Monday, May 6, 2007, Arensberg was upset because Prince had taken her car and not returned it. Arensberg was late paying her rent and needed money, so she wanted to rob Dickerson.
 {¶ 10} Appellant worked her shift at La Paloma Restaurant on May 7, 2007, then proceeded to Arensberg's apartment. She recalled she arrived between 2:30 and 2:45pm. The two girls smoked a blunt and a half of marijuana, and talked about robbing Dickerson. Arensberg retrieved two handguns, which Prince had previously loaded. Appellant explained she owned the smaller .32 caliber gun, purchasing it in January, 2007, but had given it to Prince to fix. Arensberg armed herself with the .357 gun, and explained to Appellant the gun had been loaded with hollow-point bullets, and she planned to shoot Dickerson in the arm or leg. Appellant and Arensberg took Arensberg's daughter to a neighbor's house and then returned to the apartment. Appellant stated it was approximately 2:30pm.[1]
 {¶ 11} Appellant and Arensberg walked to Mount Vernon Road, went to the StopMart convenience store, and bought two pairs of gloves. The girls walked around *Page 7 
the block, Arensberg trying to convince Appellant they had to rob Dickerson to prove to Prince they could. Finally, the girls proceeded to the front door of 443 Mount Vernon Road, which was subsequently opened by Iler. Iler left the front door cracked open as she went upstairs. Arensberg decided they should go inside. Once in the house, Arensberg instructed Appellant to shut and lock the door. The two proceeded upstairs. Iler was coming down the stairs at the same time. She stretched out her arms to stop the girls, telling them to get out of the house. Appellant and Arensberg told Iler they wanted "Ray's shit", meaning his money and drugs. Appellant did not think Iler was taking them seriously because, although she threatened to call the police, she was laughing. Arensberg pulled out her gun, and Appellant did likewise. Appellant placed her weapon two or three inches away from Iler's head and moved past, attempting to spray the other woman with a mixture of bleach and body spray. Arensberg had mixed the solution in case they needed to spray someone in the eyes. Iler ran up the stairs after Appellant and Arensberg, yelling, "Ray, these girls got guns". Tr. at 462.
 {¶ 12} Appellant entered Dickerson's bedroom, and pointed her gun in his face. She and Dickerson began fighting, and he was able to wrestle the gun away from her in a short time. Appellant pushed past Arensberg, yelling at her friend to get Dickerson off of her. As Appellant ran down the stairs, she heard a gunshot. Arensberg followed Appellant out of the house and the two girls ran down Mount Vernon Road to Arensberg's apartment. As the two were running, Arensberg told Appellant she had shot Dickerson in the head. Appellant knew Dickerson was dead. *Page 8 
 {¶ 13} Appellant and Arensberg returned to Arensberg's apartment building, and the two went to a neighbor's apartment. Arensberg had blood on her shirt from her hand which had been burnt when she fired the gun. Appellant went to Arensberg's apartment to retrieve a change of clothes for her friend, and also changed her own clothes. Arensberg contacted Prince, who came to the apartment to get the girls. Appellant, Arensberg, Arensberg's daughter, and Prince went to a mall in Heath, Ohio. They then drove to Arensberg's mother's house to drop off Arensberg's daughter. While Prince and Arensberg were in the house, they watched the news and saw reports of the shooting. Prince told Appellant and Arensberg they had to leave town. According to Appellant, they traveled to Columbus, staying in a hotel for two or three nights, then to Virginia or West Virginia, and finally New York. Appellant was subsequently arrested by federal marshalls in New York. Appellant was held at Riker's Island in New York until detectives from the Newark Police Department arrived and transported her back to Ohio.
 {¶ 14} Steven Vanoy, a detective with the Newark Police Department, testified he was working in the major crime unit on May 7, 2007, and became involved in a homicide investigation at 443 Mount Vernon Road. Detective Vanoy arrived to find the area had already been blocked with crime scene tape and personnel from the fire department and police department had already responded. Within minutes of his arrival, Dickerson's body was carried out of the residence on a gurney and taken to Licking Memorial Hospital. The detective spoke briefly to Iler and her husband, and then proceeded to canvas the area. Detective Vanoy spoke with Iler again and asked her to come to the station and give a statement to him and his partner, John Brnjic. *Page 9 
 {¶ 15} The initial phase of the investigation revealed Appellant and Arensberg as the suspects in the homicide. The police obtained a search warrant for Arensberg's apartment and executed it on the same evening. Detective Vanoy located a box of .32 caliber semi-automatic ammunition, which was identical to the ammunition in the .32 caliber handgun found in Dickerson's room. The police obtained information Appellant and Arensberg could be in the company of Lavelle Prince and also learned their cell phone numbers. With that information, the police were able to "ping" Appellant and Arensberg's cell phones which revealed they were in the Columbus area. Through the use of the cell phones and cell phones towers, the police saw Appellant and Arensberg's progression from Columbus to the State of Virginia and then north through Delaware to New York City. Detective Vanoy contacted the fugitive unit in New York. Officers in that unit subsequently located and arrested Appellant. Detective Vanoy and Detective Brnjic traveled to New York City and interviewed Appellant while she was at Riker's Island. The detectives' taped interview with Appellant was played for the jury.
 {¶ 16} The detective recalled the attempts to identify the suspects, specifically discussing the photographic array shown to Iler. Detective Vanoy stated Iler was unable to identify a suspect from the photo array. Iler indicated to the detective she was unable to make an identification because of the poor quality of the photos. Detective Vanoy characterized Appellant as the primary aggressor upon entering Dickerson's home. After Appellant and Arensberg entered the home, Appellant locked the front door and proceeded up the stairs. Appellant was the first of the two girls to confront Iler, the first of the two girls to put a gun to an individual's head, the first of the two girls to threaten to take a life, the offender who tried to blind Iler, and the first one to enter *Page 10 
Dickerson's bedroom and point a gun at the victim. The detective stated, during his interview with Appellant at Riker's Island, Appellant never expressed any remorse about the death of Dickerson.
 {¶ 17} Matthew Hoyd testified he was traveling on Mount Vernon Road on May 7, 2007. Hoyd recalled the traffic was stop and go, and his speed of travel was between 2 and 5 mph. He looked to the right and saw two girls exiting a house with what he described as "a real panicked, kind of an upset look on their face." Tr. at 222. The girls were between two and three feet away from each other. Hoyd noted the girls were in their late teens, or early twenties. He actually saw them exit the house, stating the shorter and heavier of the two exited first.[2] Hoyd testified this occurred between 2:40 and 2:50pm. When he returned from work that evening, he watched the news and heard about the shooting. Hoyd, his wife, and two young children went to the scene and noticed the area taped off. Hoyd recalled telling his wife, "That's weird. I just seen two girls running out of that house earlier this afternoon". Tr. at 227.
 {¶ 18} After hearing all the evidence and deliberations, the jury found Appellant guilty of all counts charged in the Indictment as well as the firearm specifications. The trial court conducted a sentencing hearing on February 28, 2008, and imposed an aggregate term of imprisonment of 28 years to life. Appellant filed a timely notice of appeal.
 {¶ 19} It is from her conviction and sentence Appellant appeals, raising the following assignments of error: *Page 11 
 {¶ 20} "I. THE TRIAL COURT ERRED, DEPRIVING DEFENDANT-APPELLANT OF HER RIGHTS TO A FAIR TRIAL UNDER DUE PROCESS OF LAW AND THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY AMENDMENTS V, VI, XIV OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION FOR CONTINUANCE OF THE TRIAL DATE.
 {¶ 21} "II. DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY AMENDMENTS VI AND XIV OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN COUNSEL FOR DEFENDANT-APPELLANT FAILED TO FILE MOTIONS TO SEEK THE SUPPRESSION OF: (A) DEFENDANT-APPELLANT'S CONFESSION TO THE POLICE; AND, (B) THE IN-COURT IDENTIFICATION OF DEFENDANT-APPELLANT BY CARRIE ILER."
 I {¶ 22} In her first assignment of error Appellant contends the trial court violated her constitutional rights to a fair trial and effective assistance of counsel by denying her motion for continuance of the trial date.
 {¶ 23} The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial court. State v.Unger (1981), 67 Ohio St.2d 65. A trial court's denial of a motion for a continuance will not be reversed on appeal absent an abuse of discretion, i.e. a showing that the trial court's decision was arbitrary, unreasonable or unconscionable and not merely an error of law or judgment. See: State v. Christon (1990), 68 Ohio App.3d 471;State v. Jones (1987), 42 Ohio App.3d 14. *Page 12 
 {¶ 24} In determining whether a trial court abused its discretion in denying a motion for a continuance, an appellate court should consider the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to witnesses, opposing counsel and the court; (4) whether there is a legitimate reason for the continuance, (5) whether the defendant contributed to the circumstances giving rise to the need for the continuance, and other relevant factors, depending on the unique facts of each case. See: State v. Unger, supra; State v. Holmes (1987),36 Ohio App.3d 44.
 {¶ 25} Upon review of the record, we find the trial court did not abuse its discretion in denying Appellant's motion for a continuance. Appellant was indicted on June 15, 2007, in Case No. 07CR318, and on August 17, 2007, in Case No. 07CR473. Discovery was filed on June 29, 2007, and Supplemental Discovery was filed on August 22, 2007. The trial court appointed Attorney Brehm on December 28, 2007. The trial was scheduled for February 26, 2008. Attorney Brehm was advised of the trial date when he accepted the appointment. This was the fourth continuance Appellant had requested. Although Appellant had been given almost 60 days notice of the trial date, she, nonetheless, did not request the continuance until 6 days prior to trial. We believe the trial court's denial of Appellant's fourth motion for a continuance was not arbitrary, unreasonable, or unconscionable.
 {¶ 26} Appellant's first assignment of error is overruled.
 II {¶ 27} In her second assignment of error, Appellant raises a claim of ineffective assistance of trial counsel. *Page 13 
 {¶ 28} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential.Bradley at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable professional assistance. Id.
 {¶ 29} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 965, citing Lockhart v. Fretwell (1993), 506 U.S. 364, 370,113 S.Ct. 838, 122 L.Ed.2d 180.
 {¶ 30} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143,538 N.E.2d 373, quoting Strickland at 697. *Page 14 
 {¶ 31} The focus of Appellant's claim of ineffective assistance is Attorney Brehm's failure to file two motions to suppress.
 {¶ 32} The failure to file a suppression motion does not constitute per se ineffective assistance of counsel. Kimmelman v. Morrison (1986),477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305. Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted. State v.Butcher, Holmes App. No. 03 CA 4, 2004-Ohio-5572, ¶ 26, citing State v.Robinson (1996), 108 Ohio App.3d 428, 433, 670 N.E.2d 1077.
 {¶ 33} Appellant herein first challenges Attorney Brehm's decision not to file a motion to suppress challenging the voluntariness of her statement to Detective Vanoy while she was detained at Riker's Island in New York.
 {¶ 34} "In construing whether a juvenile defendant's confession has been involuntarily induced, courts should consider the standard set forth in State v. Edwards, supra, which looks to the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. Given the above standard, the trial court can properly determine whether the juvenile appreciated his rights and voluntarily waived them in the absence of an interested adult or parent." In re Watson (1989), 47 Ohio St.3d 86, 89-90 (Internal citation omitted).
 {¶ 35} Appellant submits, when viewing the totality of the circumstances in this matter, this Court should be cognizant of the fact she was a seventeen years old with purported mental health issues, being interrogated by two detectives; had been held *Page 15 
between forty-eight and seventy hours following her arrest in New York City, which had been preceded by several days on the run from Newark, Ohio; and did not have the benefit of counsel or an adult. Appellant adds she was clearly emotional, distraught, and desiring to be near family while she was interrogated.
 {¶ 36} The record reveals Detective Vanoy advised Appellant of her Miranda Rights prior to her confession and prior to her giving a taped statement. In her taped statement, Appellant stated she understood her rights and agreed to talk to the detectives. Appellant testified she gave the statement to the detectives because she thought it was the thing to do. The taped conversation between the detectives and Appellant lasted approximately 30 minutes. Appellant also stated she had been treated fairly and had not been threatened or made any promises. We find this record is insufficient to establish a reasonable probability exists a motion to suppress would have been successful.
 {¶ 37} Appellant additionally asserts trial counsel was ineffective for failing to file for a motion to suppress Carrie Iler's in-court identification. Appellant asserts Iller's identification was unduly suggestive as she was in custody and positioned at the defense table.
 {¶ 38} Generally, identification testimony is properly admitted unless the identification was a substantial likelihood of irreparable misidentification. See, Simmons v. United States (1968), 390 U.S. 377,88 S.Ct. 967, 19 L.Ed.2d 1247; State v. Barnett (1990),67 Ohio App.3d 760, 588 N.E.2d 887; State v. Hill (1987), 37 Ohio App.3d 10,523 N.E.2d 885 The court must consider the totality of the circumstances surrounding the identification. State v. Fanning (1982),1 Ohio St.3d at 20, 437 N.E.2d 583, citing *Page 16 State v. Jackson (1971), 26 Ohio St.2d 74, 269 N.E.2d 118, paragraph two of the syllabus.
 {¶ 39} "Whether under the `totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." State v. Jells (1990), 53 Ohio St.3d 22, 27,559 N.E.2d 464.
 {¶ 40} A review of the record reveals Iler spoke with Appellant and Arensberg during the encounter at the front door. Iler spent time on the staircase, attempting to prevent the girls from proceeding to Dickerson's room. Iler was face-to-face with Appellant when Appellant threatened to kill her. We find Iler had ample opportunity to view Appellant for a substantial period of time and in such close proximity as to demonstrate the reliability of her in-court identification. Due to the nature of the encounter, Iler's attention was completely focused on Appellant and Arensberg. Iler was completely certain Appellant was one of the girls who entered her home and killed Dickerson. Iler provided a detailed description of the two girls and Appellant matched one of the descriptions.
 {¶ 41} We find under the totality of the circumstances Iler's in-court identification of Appellant was reliable. Accordingly, any motion to suppress would have been *Page 17 
unsuccessful; therefore, Attorney Brehm did not fall below an objective standard of reasonable representation.
 {¶ 42} Based upon the foregoing we find Appellant has failed to establish trial counsel was ineffective.
 {¶ 43} Appellant's second assignment of error is overruled.
 {¶ 44} The judgment of the Licking County Court of Common Pleas is affirmed.
 Hoffman, P.J., Farmer, J., and Delaney, J., concur. *Page 18 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to Appellant.
[1] Appellant is inconsistent in her testimony regarding the timing of the events.
[2] Throughout the testimony, Appellant was described as the shorter and heavier of the two girls. *Page 1