[Cite as *State v. Lane*, 2011-Ohio-3220.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | Sheila G. Farmer, P.J. |
|  | : | John W. Wise, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 10-CA-57 |
|  | : |  |
|  | : |  |
| NATHANUAL LANE | : | O P I N I O N |
|  |  |  |
| Defendant-Appellant |  |  |

CHARACTER OF PROCEEDING:     Criminal Appeal from Licking County
                             Court of Common Pleas Case No.
                             09 CR 614

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      June 24, 2011

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

BRIAN WALTZ                           ERIN J. McENANEY
Licking County Prosecutor             Burkett & Sanderson, Inc.
20 South Second Street                21 West Church Street
Fourth Floor                          Suite 201
Newark, Ohio  43055                   Newark, Ohio  43055

*Edwards, J.*

{¶1} Defendant-appellant, Nathanual Lane, appeals his conviction and sentence from the Licking County Court of Common Pleas on one count each of complicity to aggravated robbery, aggravated burglary and felonious assault. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On November 30, 2009, the Licking County Grand Jury indicted appellant on one count of aggravated robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree, one count of aggravated burglary in violation R.C. 2911.11(A)(1), a felony of the first degree, and one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. At his arraignment on December 15, 2009, appellant entered a plea of not guilty to the charges. Pursuant to an order filed on December 16, 2009, a jury trial was scheduled for March 3, 2010.

{¶3} On February 5, 2010, appellant filed a motion for a continuance of the trial. As memorialized in an Entry filed on February 9, 2010, the trial was continued to March 23, 2010. On February 16, 2010, appellant filed a motion for a continuance of the trial because his counsel had two other civil cases scheduled for March 24, 2010. The trial was continued to April 20, 2010.

{¶4} Thereafter, on April 19, 2010, appellant filed another motion for a continuance of the trial. Appellant, in his motion, alleged that Amanda Ferguson, a defense witness, had not yet been served with the subpoena for trial that was filed on February 19, 2010. Appellant contended that Ferguson was an essential witness who, during an interview with a Detective, indicated that appellant had nothing to do with the

crimes in this case and had tried to talk Jarrod Moore and Kyle Kitzmiller out of committing the same. The trial court, in its April 19, 2010, Judgment Entry denied such motion.

{¶5} Therefore, a jury trial commenced on April 20, 2010. The following testimony was adduced at trial.

{¶6} On October 18, 2009, Eric McCollum was in his apartment at approximately 8:30 p.m. when someone knocked on his door. When McCollum asked who was at the door, the person indicated that he was "Little Josh", who is a friend of McCollum's. When McCollum opened the door, he did not see anyone and then "someone came from the right side and hit me with something." Transcript at 136. McCollum then stumbled back and someone came around the door and struck him again. He was hit repeatedly by at least two people who were telling him that they were there to take his money and his stuff. According to McCollum, the two were calling him names and asking him where it was at. McCollum testified that they asked him if he had any drugs in the house and that he thought that he probably had told them no.

{¶7} McCollum testified that the men beat him and that he was in and out of consciousness. The men took his wallet and a half an ounce of marijuana that was in his apartment before leaving.

{¶8} During direct examination, McCollum testified that he knew appellant and that the two had met through Josh McCoy, who is otherwise known as "Little Josh." He further testified that he had known appellant for ten months to a year and that appellant had been to his apartment. McCollum testified that he had sold around $300.00 worth of marijuana to appellant on credit and that appellant did not pay him back until

McCollum called him a number of times. According to McCollum, appellant was upset with him about being bugged about the money. McCollum testified that he did not know Jarrod Moore or Kyle Katzmiller and that they did not know him or where he lived.

{¶9}    At trial, Detective Steve Vanoy of the Newark Police Department testified that he spoke with McCollum at the hospital after the incident and that the police had no leads. Detective Vanoy testified that on or about November 18, 2009, he was contacted at home late at night and told that Jarrod Moore had gone up to an officer in the UDF parking lot and confessed to his involvement in the robbery, felonious assault and aggravated burglary. After talking with Moore, Detective Vanoy ended up trying to locate appellant. Appellant went down to the police department and spoke with Detective Vanoy. According to the Detective, appellant admitted that he had information about the incident involving McCollum and said that Jarrod Moore had been talking about committing a robbery. Appellant told the Detective that he knew McCollum and had purchased marijuana from him in the past.

{¶10} Detective Vanoy testified that appellant indicated that he told Jarrod Moore that appellant would be an easy target. The following is an excerpt from Detective Vanoy's testimony:

{¶11} "Q. Okay.  And what happened next?

{¶12} "A. He proceeded to give us a rundown of what information he had, and then he ended up providing us with a tape recorded statement.  In that he mentions being with Jarrod Moore, and then to driving over to Mr. McCollum's residence, and then to pointing out Mr. McCollum's residence to Mr. Moore.  And on that occasion he said that it was kind of - - I guess it was just by coincidence, according to the Defendant,

that Mr. McCollum happened to walk out his front door of his residence and he actually pointed out what Mr. McCollum looked like.

{¶13} "Q. Okay. And you said he gave a taped statement.

{¶14} "A. Yes." Transcript at 171-172.

{¶15} Detective Vanoy testified that appellant indicated that, after driving Jarrod Moore to the area and pointing McCollum out to him, they separated. Appellant, in his statement, stated that he did not hear from Moore until later that evening after the robbery when appellant went over to Moore's house and saw some of the stolen marijuana. Detective Vanoy indicated that he thought that appellant said Kyle Kitzmiller was present also. Appellant, during his interview, told the Detective that he had suggested using the name Little Josh to Jarrod Moore so that McCollum would be more likely to open up the front door.

{¶16} After the interview, appellant went with Detective Vanoy and another Detective out to Buckeye Lake in an attempt to locate Kyle Kitzmiller who was a suspect. After talking with Kitzmiller, the Detective interviewed appellant again. Appellant, during the interview, admitted that he had contact with Kitzmiller and Moore moments before the robbery and that the three had walked down to McCollum's house together. Appellant told the Detective that he had walked down with the other two because he was scared that they would beat him up if he did not go along with the plan. Appellant indicated that he was a block and a half away from McCollum's apartment at the time of the robbery and could not see the apartment from where he was standing. After the robbery, appellant's wife, who was driving in the neighborhood, picked up all three men and dropped Kitzmiller and Moore off at their apartment. Later that evening,

appellant and his wife went to such apartment and either appellant and/or his wife smoked some of the stolen marijuana. Appellant indicated to the police that he had given Moore and Kitzmiller information that McCollum might have marijuana and money in a particular cabinet and would not fight back.

{¶17} At the conclusion of the evidence and the end of deliberations, the jury, on April 21, 2010, found appellant guilty of complicity to felonious assault, complicity to aggravated burglary and complicity to aggravated robbery. As memorialized in a Judgment Entry filed on May 25, 2010, appellant was sentenced to an aggregate prison sentence of seven years.

{¶18} Appellant now raises the following assignments of error on appeal:

{¶19} "I. THE CONVICTION OF THE DEFENDANT-APPELLANT WAS BASED ON INSUFFICIENT EVIDENCE TO WARRANT THE SAME.

{¶20} "II. THE TRIAL COURT COMMITTED HARMFUL ERROR AND ABUSED ITS DISCRECTION (SIC) IN DENYING THE APPELLANT'S REQUEST FOR A CONTINUANCE OF THE JURY TRIAL HEREIN."

I

{¶21} Appellant, in his first assignment of error, argues that his convictions for complicity to felonious assault, aggravated robbery and aggravated burglary were based on insufficient evidence. We disagree.

{¶22} When reviewing a claim of sufficiency of the evidence, an appellate court's role is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Contrary

to a manifest weight argument, a sufficiency analysis raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks*, supra at paragraph two of the syllabus.

{¶23} Appellant was convicted of complicity to aggravated burglary, aggravated robbery and felonious assault. R.C. 2923.03 sets forth the essential elements for a complicity offense. The complicity statute provides, in relevant part:

{¶24} "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

{¶25} "(1) Solicit or procure another to commit the offense;

{¶26} "(2) Aid or abet another in committing the offense;

{¶27} "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;…"

{¶28} Generally, a criminal defendant has aided or abetted an offense if he has supported, assisted, encouraged, cooperated with, advised, or incited another person to commit the offense. See *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, syllabus. "'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *State v. Mendoza*, 137 Ohio App.3d 336, 342, 2000-Ohio-1689, 738 N.E.2d 822, quoting *State v. Stepp*, (1997), 117 Ohio App.3d 561, 568-569, 690 N.E.2d 1342.

{¶29} R.C. 2911.11(A)(1) defines the offense of aggravated burglary as: "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply: (1) the offender inflicts, or attempts or threatens to inflict physical harm on another."

{¶30} R.C. 2911.01, the aggravated robbery statute, states, in relevant part, as follows: "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:…"(3) Inflict, or attempt to inflict, serious physical harm on another."

{¶31} Finally, R.C. 2903.11, the felonious assault statute, states, in relevant part, as follows: "(A) No person shall knowingly do either of the following: (1) Cause serious physical harm to another or to another's unborn…"

{¶32} Appellant specifically maintains that there was insufficient evidence that he "solicited, procured, aided or abetted Mr. Moore or Mr. Kitzmiller in their commission of the offences (sic)." However, there was testimony adduced at trial that appellant, when told that Jarrod Moore was thinking of committing a robbery, suggested McCollum and indicated that he was an easy target who would not fight back. McCollum testified that appellant was upset with McCollum for bugging him about money. Appellant also indicated that McCollum, who appellant knew and whose apartment he had been in before, would have both money and drugs. Testimony also was adduced that appellant

suggested using the name "Little  Josh" as a means of gaining access into McCollum's apartment, that appellant walked with Moore and Kitzmiller down to McCollum's apartment, and that appellant left the area with the two others in his wife's car after the crimes were completed. Later the same evening, appellant went over to Moore and Kitzmiller's apartment where either he and/or his wife smoked the stolen marijuana.

{¶33}  Based on the foregoing,  we find that, viewing the evidence in  a light most favorable to the prosecution, any rational trier of fact could have found that appellant aided or abetted Jarrod Moore and Kyle Kitzmiller in the commission of the offenses in this case.

{¶34}  Appellant's first assignment of error is, therefore, overruled.

II

{¶35}  Appellant, in his second assignment of error, argues that the trial court erred in denying his April 19, 2010 motion for a continuance of the trial.  We disagree.

{¶36}  The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial court. *State v. Unger* (1981), 67 Ohio St.2d 65, 423 N.E.2d 1078. A trial court's denial of a motion for a continuance will not be reversed on appeal absent an abuse of discretion, i.e. a showing that the trial court's decision was arbitrary, unreasonable or unconscionable and not merely an error of law or judgment. See: *State v. Christon* (1990), 68 Ohio App.3d 471, 589 N.E.2d 53; *State v. Jones* (1987), 42 Ohio App.3d 14, 535 N.E.2d 1372.

{¶37}  As is stated above, appellant, on April 19, 2010, which was the day before trial, filed a motion for a continuance of the trial date. Appellant, in his motion, indicated that an "essential defense witness", Amanda Ferguson, had not yet been served with a

subpoena for trial. Appellant, in his motion, indicated that Ferguson, during an interview with Detective Vanoy, had stated that appellant had nothing to do with the crimes in this case and had tried to talk Moore and Fitzmiller out of committing them.

{¶38} Ferguson, who Detective Vanoy testified was Jarrod Moore's girlfriend, was originally subpoenaed on January 29, 2010 for trial on March 3, 2010. The subpoena was issued and returned to the trial court on February 17, 2010 without being served. The Sheriff's notation indicated that Ferguson had moved three months prior. On February 19, 2010, a subpoena was again issued for Amanda Ferguson at the same address ordering her to appear for trial on April 20, 2010. The subpoena was never served on Ferguson because of a "bad address per new resident" and was returned unserved on February 25, 2010. As noted by the trial court in its April 19, 2010, Judgment Entry denying appellant's motion for a continuance:

{¶39} "In the nearly two months since that subpoena was returned for the current trial marked unable to serve, it would appear no steps have been taken in an effort to seek the witness' attendance.  Furthermore, it was the same bad address that was provided in the first instance for an earlier trial date."

{¶40} Based on the foregoing, we find that the trial court did not err in denying appellant's motion for a continuance of the trial date. The trial court's decision was not arbitrary, unconscionable or unreasonable.

{¶41} Appellant's second assignment of error is, therefore, overruled.

{¶42} Accordingly, the judgment of the Licking County Court of Common Pleas is affirmed.

By: Edwards, J.

Farmer, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/d0315

[Cite as *State v. Lane*, 2011-Ohio-3220.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| NATHANUAL LANE | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 10-CA-57 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed.  Costs assessed to appellant.

_____

_____

_____

JUDGES